Diana **COLLAZO–SANTIAGO,** Plaintiff,

v.

**TOYOTA MOTOR CORPORATION,** Defendant.

Civil No. 95–1091.

United States District Court, D. Puerto Rico.

July 30, 1996.

Jorge M. Suro–Ballester, Santurce, PR, for plaintiff.

Antonio Gnocchi–Franco, Hato Rey, PR, for defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

This suit arises from the injuries sustained by the plaintiff, Diana Collazo–Santiago, allegedly resulting from the deployment and explosion of her car's two airbags during a multi-automobile collision. The defendant, Toyota Motor Corporation ("TMC"), filed a motion to dismiss the complaint (Docket No. 11), in which it argues that the complaint should be dismissed both because the plaintiff has failed to comply with the Court's scheduling order by not producing an expert witness' report, and because the plaintiff has negligently permitted the spoliation of the evidence by failing to preserve her vehicle for inspection by the defendants. The plaintiff opposed the motion to dismiss, arguing that she was not required to produce an expert witness report nor even to retain an expert because, pursuant to the consumer expectations test for defectiveness, she was not required to rely on an expert witness in order to prevail on her cause of action. TMC, however, filed a motion requesting a ruling on the applicable law (Docket no. 18), based on its contention that the consumer expectations test has not been adopted in Puerto Rico, and that the plaintiff must therefore establish the existence of a defect by means of expert witness testimony. For the reasons discussed below, the Court denies the motion to dismiss and rules that the *Barker* test (described below), which includes the consumer expectations test, forms part of the law of products liability in Puerto Rico.

However, the Court also rules that the consumer expectations prong of the *Barker* test is inapplicable to the case at hand.

### I. Spoliation of Evidence

TMC has brought to the Court's attention the fact that it has not been able to locate the car whose airbags allegedly caused the plaintiff's injuries. Apparently, when the plaintiff sought compensation from her insurer, she also turned over the car, and the insurance company then sold the car at a public auction. Although the plaintiff's insurer has provided the purchaser's name and address, TMC's repeated efforts at locating this person have been unavailing. As matters now stand, aside from some photographs of the plaintiff and her vehicle that were taken by the insurance company, there remains no physical evidence of the incident that led to the filing of this complaint.

TMC has filed a motion to dismiss, based on the contention that the plaintiff's intentional or merely negligent spoliation of the evidence deprived TMC of an adequate opportunity to defend itself. TMC's motion might have been successful if the plaintiff's claim were based on a defect in *manufacturing,* for such a claim would require an inspection and evaluation of the specific item that caused the injury. Instead, in the case at hand, the plaintiff's claim is based on an alleged *design* defect, which, by definition, would be found in the entire production run of the vehicle model in question. The proof or refutation of such a claim may be sufficiently supported with evidence as to other, identical vehicles. Because the lack of evidence as to the condition of the plaintiff's car will not hamper the defendant's conduct of its case, the Court decides not to dismiss the complaint on this basis. *Soule v. General Motors Corp.,* 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 612, 882 P.2d 298, 303 (1994).

### II. Puerto Rico Products Liability Law and the Consumer Expectations Test for Defectiveness

In *Barker v. Lull Engineering Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978), the Supreme Court of California set

forth a test for determining whether a product or design is defective. The full test, in that Court's words, is that:

> "a product is defective in design (1) if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the plaintiff proves that the product's design proximately caused his injury and the defendant fails to prove, in light of the relevant factors ..., that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design."

143 Cal.Rptr. at 239–40, 573 P.2d at 457–58. The first prong of the *Barker* test is what is commonly referred to as the consumer expectations test. As discussed below, pursuant to the consumer expectations test a plaintiff need not proceed on the testimony of an expert, but may instead merely furnish objective evidence as to the injury-causing occurrence, leaving it up to the jury to determine whether or not the product met a reasonable consumer's safety expectations.

Whether the *Barker* test has been adopted in Puerto Rico is the fundamental question in this case at this stage of the proceedings, given that the plaintiff has not even retained an expert witness. The defendant, TMC, argues that such test has not, or at least, has not yet been adopted by the Supreme Court of Puerto Rico. The plaintiff, naturally, objects to this interpretation of Puerto Rico law.

The controversy revolves around what the Supreme Court intended to state by means of its opinion in *Rivera–Santana v. Superior Packaging, Inc.*, —— P.R.Dec. ——, 92 J.T.S. 165 (December 9, 1992). In that case, which involved a plaintiff who had suffered serious burns after his coverall caught fire, the Court reversed a lower court's grant of summary judgment on the issue of strict products liability, holding that there were genuine issues of material fact that required the intervention of a factfinder.[1] More importantly for the case at hand, the Court provided a general overview of products liability law in Puerto Rico. *Rivera–Santana*, 92 J.T.S. at 10163–

64. What is striking about that overview is that the Court cited extensively from *Barker*, including the language cited above setting forth the two-prong test for defectiveness, and that all the other cases that the Court cited were opinions written by the Supreme Court of California. 92 J.T.S. at 10163–64 (citing *Greenman v. Yuba Power Products*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963) (Traynor, J.); *Canifax v. Hercules Powder Co.*, 237 Cal.App.2d 44, 46 Cal.Rptr. 552 (1965); *Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972); *Cavers v. Cushman Motor Sales, Inc.*, 95 Cal.App.3d 338, 157 Cal.Rptr. 142 (1979); *DeLeón v. Commercial Manufacturing & Supply Co.*, 148 Cal.App.3d 336, 195 Cal.Rptr. 867 (1983); *Groll v. Shell Oil Co.*, 148 Cal.App.3d 444, 196 Cal.Rptr. 52 (1983); *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal.App.3d 726, 226 Cal.Rptr. 299 (1986); and *Anderson v. Owens–Corning Fiberglas Corp.*, 53 Cal.3d 987, 281 Cal.Rptr. 528, 281 Cal.Rptr. 528 (1991)). The Court also cited with approval an article by Chief Justice Traynor of the California Supreme Court, which proposed a definition of defectiveness similar to the one finally adopted in *Barker*. *See*, Traynor, *The Ways and Meaning of Defective Products and Strict Liability*, 32 Tenn.L.Rev. 363 (1965).

Nevertheless, defendant TMC argues that any and all references to *Barker* were *dicta* and that, therefore, it cannot be said that the *Barker* test is applicable to products liability actions in Puerto Rico. In the alternative, TMC suggests that the status of the *Barker* test in Puerto Rico is highly uncertain, and that the Court should therefore certify the question to the Supreme Court of Puerto Rico.

It must be admitted that in *Rivera–Santana*, 92 J.T.S. at 10163–64, the Court's general overview of products liability law is not the holding of the case. Furthermore, no prior decision by the Court had explicitly adopted the *Barker* test. It cannot be said with absolute certainty, therefore, that the *Barker* test is part of the law of products liability at this time.

---

1. All civil trials in Puerto Rico courts are bench trials; juries are utilized only for criminal trials.

The uncertainty as to the law is not so great, however, as to require the Court to certify to the Supreme Court of Puerto Rico the question whether the *Barker* test for manufacturing or design defects forms part of the law of products liability in Puerto Rico. It is well-established that the decision to certify questions of state law is a discretionary one. "Absent controlling state court precedent, a federal court ... may certify a state law issue to the state's highest court, or undertake its prediction 'when the course [the] state courts would take is reasonably clear.'" *VanHaaren v. State Farm Mutual Automobile Insurance Co.*, 989 F.2d 1, 3 (1st Cir.1993) (citing *Porter v. Nutter*, 913 F.2d 37, 41 n. 4 (1st Cir.1990)). *See R.W. International Corp. v. Welch Foods, Inc.*, 88 F.3d 49 (1st Cir.1996) (citing *VanHaaren*, 989 F.2d at 3); *Lareau v. Page*, 39 F.3d 384, 390 (1st Cir.1994) (same); *Lyons v. National Car Rental Systems, Inc.*, 30 F.3d 240, 245 (1st Cir.1994) (same).

However, although "[t]he decision to certify a question of law to the local court is discretionary," *Ruiz–Rodríguez v. Litton Industries Leasing Corp.*, 574 F.2d 44, 46 (1st Cir.1978) (citing *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974); *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970)); *Oliveras–Salas v. Puerto Rico Highway Authority*, 884 F.2d 1532, 1535 (1st Cir. 1989); *In re Puerto Rico Electric Power Authority*, 687 F.2d 501, 504 (1st Cir.1982); it is nevertheless "inappropriate for a federal court to use such a procedure when the course state courts would take is reasonably clear." *Bi–Rite Enterprises, Inc. v. Bruce Miner Company, Inc.*, 757 F.2d 440, 443 n. 3 (1st Cir.1985) (citing C. Wright, A. Miller, E.

Cooper, 17A *Federal Practice and Procedure* § 4248 (1978)).[2] In sum, because the task is essentially oracular, a court should exercise its discretion to certify only when it lacks confidence in the accuracy of its prediction.

Although the question before the Court is a question of Puerto Rico law, its resolution will not determine the outcome of the case (which makes it doubtful that the Supreme Court would accept certification in this case), and, in any event, "the course [that] state courts would take is reasonably clear." *Bi–Rite Enterprises*, 757 F.2d at 443 n. 3. The Supreme Court's references to *Barker* in *Rivera–Santana* may have been *dicta*, but they are highly indicative of that court's future course of decision. Nor was *Rivera–Santana* an isolated occurrence; the other two important decisions by the Supreme Court of Puerto Rico on the question of strict products liability have relied substantially on the precedents set by the Supreme Court of California. *See Mendoza v. Cerveceria Corona, Inc.*, 97 P.R.Dec. 499, 505–12 (1969) (citing *Klein v. Duchess Sandwich Co.*, 14 Cal.2d 272, 93 P.2d 799 (1939); *Greenman*, 27 Cal. Rptr. at 701, 377 P.2d at 901; Traynor, *The Ways and Means of Defective Products and Strict Liability, supra*); and *Montero–Saldaña v. American Motors Corp.*, 107 P.R.Dec. 452, 461 (1978) (citing *Greenman*, 27 Cal.Rptr. at 700–01, 377 P.2d at 900–901; Traynor, *supra; Cronin*, 104 Cal.Rptr. 433, 501 P.2d 1153; *Barker*, 143 Cal.Rptr. 225, 573 P.2d 443; and *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978)).

The pattern is unmistakable. The Supreme Court of Puerto Rico has consistently approved of the Supreme Court of Califor-

---

**2.** The Puerto Rico Supreme Court considers almost exactly the same factors as a federal court in determining whether it should *accept* jurisdiction over a certified question. P.R.R.Civ.P. 53.1(c), P.R.Laws Ann. tit. 32, App. III, R. 53.1(c) (Official translation 1983), provides, in pertinent part, that:

"[a] petition for certification is also perfected when ... any Federal District.Court ... requests, by filing the proper application with the clerk of the Supreme Court of Puerto Rico, a finding on local issues of law which are determinant to the cause of action brought before its consideration, which issues have no

clear precedents in the decisions of the Supreme Court of the Commonwealth of Puerto Rico."

*See also Pan American Computer Corp. v. Data General Corp.*, 112 P.R.Dec. 780, 788 (1982) (interpreting Rule 53.1(c)); *In re San Juan Dupont Plaza Hotel Fire Litigation*, 687 F.Supp. 716 (D.P.R.1988). However, the Court has added a finality requirement, that a certified question shall be accepted only if "the court's answer [is] binding on all the parties" and terminates the entire dispute. *Pan American Computer Corp.*, 112 P.R.Dec. at 788.

nia's formulations of the law of products liability. It is thus safe to predict that when a case squarely presenting the issue came before it, the Supreme Court would explicitly adopt the *Barker* test.

## III. Expert Testimony and the Barker Test

■ The second question before the Court is whether the plaintiff's interpretation of the *Barker* test is correct; that is, whether a plaintiff in a products liability action is entitled to present her case without relying on the testimony of an expert witness. Upon reviewing the relevant California case law, the Court concludes that the plaintiff's interpretation is correct.

■ Under the first part of the test, a product will be considered defective in design "if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker*, 143 Cal.Rptr. at 239–40, 573 P.2d at 457–58. "Under this standard, an injured plaintiff will frequently be able to demonstrate the defectiveness of a product by resort to circumstantial evidence, even when the accident itself precludes identification of the specific defect at fault." *Id.* 143 Cal. Rptr. at 236, 573 P.2d at 454. This part of the test "reflects a warranty analysis and is based on the theory that when a manufacturer places a product on the market, a representation is impliedly made that the product is safe for the tasks it was designed to accomplish." *Campbell*, 184 Cal.Rptr. at 894, 649 P.2d at 227. In sum, in order to prevail under this part of the test, a plaintiff must first establish a prima facie case that the defendant's product caused her injuries and then "produce evidence that the product

failed to satisfy ordinary consumer expectations as to safety." *Id.* 184 Cal.Rptr. at 899, 649 P.2d at 232.

■ The plaintiff's burden of proof under the first prong may be met without expert testimony. "The consumer expectations test is reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective regardless of expert opinion about the merits of the design. It follows that where the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect." *Soule v. General Motors Corp.*, 8 Cal.4th 548, 567, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994).[3] Instead, a plaintiff must furnish evidence establishing "the objective conditions of the product," such as photographs of the design features of the automobile. *Campbell*, 184 Cal.Rptr. at 899, 649 P.2d at 232.

However, "the expectations of the ordinary consumer cannot be viewed as the *exclusive* yardstick for evaluating design defectiveness because 'in many situations ... the consumer would not know what to expect, because he would have no idea how safe the product could be made.'" *Barker*, 143 Cal.Rptr. at 236, 573 P.2d at 454 (emphasis added). Thus, even if a product meets an ordinary consumer's reasonable expectations as to safety, a product may still be found to be defective under *Barker*'s second prong, "if the plaintiff proves that the product's design proximately caused his injury and the defendant fails to prove, in light of the relevant factors discussed above,[4] that on balance the benefits of the challenged design outweigh

---

3. That is not to say that expert testimony would be inadmissible for other purposes; to the contrary, as explained below, the Court finds that even under the consumer expectations prong of the *Barker* test, expert testimony may be introduced to demonstrate causation and otherwise to instruct the jury as to the more technical issues in the case.

4. The California Supreme Court had written earlier in the same opinion that "[a] review of past cases indicates that in evaluating the adequacy of

a product's design pursuant to this latter standard, a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Barker*, 143 Cal.Rptr. at 237, 573 P.2d at 455.

the risk of danger inherent in such design." *Barker*, 143 Cal.Rptr. at 240, 573 P.2d at 458.

Under this second, risk/utility balancing prong, the plaintiff need only establish a prima facie case of causation. "That is, evidence must be adduced which would permit a jury to find that a design feature of the product was a proximate cause of the plaintiff's injury. Once plaintiff has made such a showing, the burden of proof shifts to" the defendant. *Campbell*, 184 Cal.Rptr. at 895, 649 P.2d at 228.

A plaintiff is not always required to furnish expert testimony in order to establish of the prima facie case of causation. First of all, "[t]he plaintiff in a strict liability action is not required to disprove every possible alternative explanation of the injury in order to have the case submitted to the jury." *Campbell*, 184 Cal.Rptr. at 896, 649 P.2d at 229. What is more, "[t]he mere fact that other inferences adverse to the plaintiff might be drawn does not render the inference favorable to plaintiff too conjectural or speculative for consideration [by the jury]." *Id.* Given the limited nature of the showing required of the plaintiff, "the decisive consideration in determining the [necessity] of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that [persons] of ordinary education could reach the conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert [is required]." *Id.* 184 Cal.Rptr. at 898, 649 P.2d at 231. In the case at hand, the question of causation is not particularly difficult. The plaintiff will personally testify that she felt the airbag hit her face and abrade it. That appears to be sufficient to establish a prima facie case of causation.

Of course, the defendant may attempt to refute the plaintiff's allegations of defective design by introducing expert evidence under either prong of the *Barker* test as to causation, and under the second prong, also as to the balance between the benefits and the risks attendant to the design. *Campbell*, 184 Cal.Rptr. at 899, 649 P.2d at 232. *See also* 2 *American Law of Products Liability* § 30.71 at 83 (3d ed.1987). The plaintiff may, in turn, subsequently cross-examine the defendant's expert witness.

## IV. Application of the Barker Test to the Instant Case

The final question before the Court is whether the plaintiff's interpretation of the applicability of the *Barker* test to her case is correct; that is, whether she is entitled to present her case under both prongs of the *Barker* test. The Court concludes that the plaintiff's interpretation is only partly correct, because notwithstanding the fact that the plaintiff has framed her arguments in terms of the consumer expectations test (*Barker*'s first prong), the Court finds that only the second prong is applicable to the case at hand.

As the Supreme Court of California has noted, in some cases it may constitute reversible error for a trial court to permit jury consideration of the consumer expectations test, for "a jury may not be left free to find a violation of ordinary consumer expectations whenever it chooses. Unless the facts actually permit an inference that the product's performance did not meet the minimum safety expectations of its ordinary users, the jury must engage in the balancing of risks and benefits required by the second prong of *Barker*." *Soule*, 8 Cal.4th at 567, 34 Cal.Rptr.2d 607, 882 P.2d 298. In the end, this depends on whether or not "the consumer would ... know what to expect," or whether "he would have [a good] idea how safe the product 'could be made.'" *Barker*, 143 Cal.Rptr. at 236, 573 P.2d at 454. In the case at hand, even assuming that the airbags caused the plaintiff's injuries, it is highly unlikely that an ordinary consumer would know what technical considerations influenced the design of the airbag system in TMC cars, nor have any specific expectations as to how safe airbags should be. Instructing the jury on the consumer expectations test would therefore impermissibly permit the jury to find liability on little more than intuition or whim. Accordingly, the jury shall not be given instructions based on *Barker*'s first prong.

### V. Conclusion

Although the Supreme Court of the Commonwealth of Puerto Rico has not ruled on the specific question at issue in this case, the Court is comfortable predicting that it would hold that the *Barker* test forms part of Puerto Rico's products liability law. Pursuant to that test, it is not necessary for a plaintiff in a products liability action to furnish the Court with expert witness testimony in order to have its case be submitted to the jury. Defendant TMC's motion to dismiss must therefore be denied. However, while the jury will be instructed regarding the risk/utility analysis found in *Barker*'s second prong, it will not be instructed regarding the consumer expectations test embodied in the first prong.

IT IS SO ORDERED.