USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 97-1792 GENEROSO PEREZ-TRUJILLO, Plaintiff, Appellant, v. VOLVO CAR CORPORATION (SWEDEN), Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jos Antonio Fust , U.S. District Judge] ___________________  ____________________ Before Lynch, Circuit Judge, _____________ Cyr, Senior Circuit Judge, ____________________ and DiClerico*, District Judge. ______________  ____________________ Eduardo M. Joglar, with whom Esther Cresp n Credi and Law Offices _________________ ____________________ ___________ of Eduardo M. Joglar were on brief for appellant. ____________________ Carlos A. Steffens, with whom Manuel A. Guzm n and Manuel A. ___________________ _________________ _________ Guzm n Law offices were on brief for appellee. __________________  ____________________ March 5,1998  ____________________  ____________________ *Of the District of New Hampshire, sitting by designation. CYR, Senior Circuit Judge. Plaintiff Generoso Perez- CYR, Senior Circuit Judge.  _____________________ Trujillo [ Perez ] challenges a district court order awarding summary judgment to defendant Volvo Car Corporation (Sweden) [ Volvo ] in this strict product liability action. We reverse and remand for further proceedings. I I BACKGROUND1 BACKGROUND __________ On August 10, 1993, Perez was operating a new 1993 On August 10, 1993, Perez was operating a new 1993 Volvo 940 GL381 along a smooth, straight roadway in Bayamon, Volvo 940 GL381 along a smooth, straight roadway in Bayamon, Puerto Rico, when the air bag on the driver s side prematurely Puerto Rico, when the air bag on the driver s side prematurely deployed, causing him to lose consciousness and collide with an deployed, causing him to lose consciousness and collide with an oncoming vehicle driven by Alexis Pagan Marrero [ Pagan ]. Perez oncoming vehicle driven by Alexis Pagan Marrero [ Pagan ]. Perez sustained a permanent cervical disc herniation. sustained a permanent cervical disc herniation. Just before the collision, Pagan had seen the Perez Just before the collision, Pagan had seen the Perez vehicle "zigzagging" and observed a "big [air] bag" and "white vehicle "zigzagging" and observed a "big [air] bag" and "white smoke" in the driver's compartment. After the accident, the air smoke" in the driver's compartment. After the accident, the air bag sensor, which monitors the rate of vehicle deceleration, was bag sensor, which monitors the rate of vehicle deceleration, was sent to Volvo for testing.2 sent to Volvo for testing. The air bag is designed to inflate and deflate within The air bag is designed to inflate and deflate within one-fifth of a second, an event undetectable by the human eye. one-fifth of a second, an event undetectable by the human eye. During deployment, the diagnostic unit in the sensor records the During deployment, the diagnostic unit in the sensor records the  ____________________ We relate the background facts in the light most favorable to Perez, the nonmoving party. See Acosta-Orozco v. Rodriguez- ___ _____________ __________ de-Rivera, 132 F.3d 97, 98 (1st Cir. 1997). _________ 2Should it detect a rate of frontal deceleration beyond preset tolerances the deployment threshold the sensor transmits an electrical signal to the ignitor located within the air bag inflator, causing an ignition which instantaneously fills the air bag with nitrogen gas. 2 actual vehicle deceleration rate, the status of the battery actual vehicle deceleration rate, the status of the battery powering the air bag, and any fault codes. Following deployment, powering the air bag, and any fault codes. Following deployment, the electrical circuits in the sensor burn out and cannot record the electrical circuits in the sensor burn out and cannot record further data. further data. The air bag deployment analysis report [ ADAR ] subse- The air bag deployment analysis report [ ADAR ] subse- quently issued by Volvo reflected that the sensor had recorded a quently issued by Volvo reflected that the sensor had recorded a [ low violence ] crash, normal battery status, with no fault [ low violence ] crash, normal battery status, with no fault codes indicating abnormal functioning. Based on these data, codes indicating abnormal functioning. Based on these data, Bengt Schultz, a qualified air bag expert employed by Volvo, Bengt Schultz, a qualified air bag expert employed by Volvo, concluded that the air bag must have deployed after, rather than concluded that the air bag must have deployed after, rather than before, the collision. before, the collision. Perez brought suit against Volvo in federal district Perez brought suit against Volvo in federal district court, asserting a strict product liability claim based on the court, asserting a strict product liability claim based on the theory that the Perez injury was proximately caused by the air theory that the Perez injury was proximately caused by the air bag system, which had been defective when it left the Volvo bag system, which had been defective when it left the Volvo factory. Volvo moved for summary judgment, in reliance on the factory. Volvo moved for summary judgment, in reliance on the ADAR and the expert testimony presented by its employee, Schultz. ADAR and the expert testimony presented by its employee, Schultz. Perez responded with (1) eyewitness deposition testimony from Perez responded with (1) eyewitness deposition testimony from Pagan; (2) an affidavit from Luis Diaz Gandia, a putative air bag Pagan; (2) an affidavit from Luis Diaz Gandia, a putative air bag expert;3 and (3) the written responses Volvo provided in July expert; and (3) the written responses Volvo provided in July 1994 to a National Highway Traffic Safety Administration 1994 to a National Highway Traffic Safety Administration [ NHTSA ] investigation, in which Volvo could not explain what [ NHTSA ] investigation, in which Volvo could not explain what caused several so-called "inadvertent [Volvo air bag] deploy- caused several so-called "inadvertent [Volvo air bag] deploy-  ____________________ Diaz, a professor of electrical engineering, attested that insurance industry studies have indicated that non-collision, inadvertent air bag deployments occur in about 6 out of every 75,000 deployments, and that an air bag sensor s performance may be diminished by adverse external factors such as humidity. 3 ments" reported to the NHTSA. ments" reported to the NHTSA. The district court ultimately awarded summary judgment The district court ultimately awarded summary judgment to Volvo, for the following reasons.4 First, the court consid- to Volvo, for the following reasons. First, the court consid- ered intrinsically incredible the Pagan eyewitness testimony that ered intrinsically incredible the Pagan eyewitness testimony that the air bag had inflated and stayed inflated, given the uncon- the air bag had inflated and stayed inflated, given the uncon- troverted expert testimony that air bags inflate and deflate too troverted expert testimony that air bags inflate and deflate too rapidly for the human eye to detect. Second, the ADAR and the rapidly for the human eye to detect. Second, the ADAR and the expert testimony from Schultz conclusively refuted the Pagan expert testimony from Schultz conclusively refuted the Pagan eyewitness testimony, since the sensor is designed to stop eyewitness testimony, since the sensor is designed to stop recording data once the air bag deploys, and therefore a prema- recording data once the air bag deploys, and therefore a prema- ture deployment would have disabled the sensor from recording the ture deployment would have disabled the sensor from recording the subsequent collision. Finally, the district court noted that subsequent collision. Finally, the district court noted that Perez presented no competent scientific information to demon- Perez presented no competent scientific information to demon- strate that the air bag had functioned differently from any strate that the air bag had functioned differently from any other produced by Volvo in that year, nor any scientific other produced by Volvo in that year, nor any scientific explanation how the air bag in question malfunctioned or was explanation how the air bag in question malfunctioned or was poorly designed. Thereafter, the court denied the motion for poorly designed. Thereafter, the court denied the motion for reconsideration submitted by Perez. See Fed. R. Civ. P. 59(e). reconsideration submitted by Perez. See Fed. R. Civ. P. 59(e). ___ II II DISCUSSION DISCUSSION __________ We review the summary judgment ruling de novo, viewing __ ____  ____________________ Although the district court had noted its own serious reservations regarding the admissibility of the proffered expert testimony from Diaz and the NHTSA investigative report, see infra ___ _____ note 7, its dismissal order was not predicated on any evidentiary exclusion. Instead, the court simply discounted the weight to be ______ accorded the proffered expert testimony from Diaz. The court opined that Diaz had provided [only] a scientific veneer, based on no testing or studies. See infra at p. 10 (referencing ___ _____ Daubert). _______ 4 all disputed facts and reasonable inferences favorably to Perez, the nonmoving party. See Acosta-Orozco v. Rodriguez-de-Rivera, ___ _____________ ___________________ 132 F.3d 97, 98 (1st Cir. 1997). The summary judgment ruling cannot stand unless Perez failed to adduce sufficient competent evidence to generate a trialworthy issue as to some element essential to his case. See FDIC v. Elder Care Servs., Inc., 82 ___ ____ ________________________ F.3d 524, 526 (1st Cir. 1996) (citing Celotex Corp. v. Catrett, ______________ _______ 477 U.S. 317, 322-23 (1986)). Under Puerto Rico law, Perez must prove four essential elements; viz. (1) the Volvo air bag had a manufacturing defect  ____ of which Perez was unaware, (2) the defect made the air bag system unsafe, 5 (3) the usage to which the air bag was put by (3) the usage to which the air bag was put by Perez was reasonably foreseeable by Volvo, and (4) the defect Perez was reasonably foreseeable by Volvo, and (4) the defect proximately caused injury to Perez. See Rivera Santana v. proximately caused injury to Perez. See Rivera Santana v. ___ _______________ Superior Packaging Inc., No. 89-593, 1992 WL 754830, at *4 (P.R. Superior Packaging Inc., No. 89-593, 1992 WL 754830, at *4 (P.R. _______________________ Dec. 9, 1992); see also Malave-Felix v. Volvo Car Corp., 946 F.2d Dec. 9, 1992); see also Malave-Felix v. Volvo Car Corp., 946 F.2d ___ ____ ____________ _______________ 967, 971 (1st Cir. 1991). Given satisfactory proof of these four 967, 971 (1st Cir. 1991). Given satisfactory proof of these four essential elements Volvo would be strictly liable even though the essential elements Volvo would be strictly liable even though the air bag was manufactured with reasonable care and regardless air bag was manufactured with reasonable care and regardless whether Perez owned the Volvo. See Restatement (Second) of Torts whether Perez owned the Volvo. See Restatement (Second) of Torts ___ 402A. Only the first and second elements are at issue here. 402A. Only the first and second elements are at issue here.  ____________________ The Puerto Rico courts generally embrace the principles of strict product liability prescribed in the Restatement (Second) of Torts 402A. See Malave-Felix v. Volvo Car Corp., 946 F.2d ___ ____________ ________________ 967, 971 (1st Cir. 1991) (citing Mendoza v. Cerveceria Corona, _______ ___________________ Inc., 97 P.R.R. 487, 495-96 (1969)). The unsafeness criterion ____ is the single significant departure, as it further relaxes the claimant s burden, under the Restatement, of proving that the defective product was "unreasonably dangerous." See id. (citing ___ ___ Montero Saldana v. American Motors Corp., 107 D.P.R. 452 (1978)). _______________ _____________________ 5 As to the first element, a manufacturing defect is As to the first element, a manufacturing defect is present if the product differs from the manufacturer s intended present if the product differs from the manufacturer s intended result or from other ostensibly identical units of the same result or from other ostensibly identical units of the same product line. Rivera Santana, No. 89-593, 1992 WL 754830, at *5 product line. Rivera Santana, No. 89-593, 1992 WL 754830, at *5 ______________ n.7. Volvo does not deny that competent proof of an air bag n.7. Volvo does not deny that competent proof of an air bag deployment prior to a frontal collision would establish the deployment prior to a frontal collision would establish the _____ requisite unsafe defect. Volvo insists, however, that the requisite unsafe defect. Volvo insists, however, that the district court correctly dismissed, as incredible, the proffered district court correctly dismissed, as incredible, the proffered testimony that Pagan saw the air bag inflated, since it is testimony that Pagan saw the air bag inflated, since it is undisputed that the human eye cannot perceive the inflation- undisputed that the human eye cannot perceive the inflation- deflation event. Since we cannot agree with the district court s deflation event. Since we cannot agree with the district court s characterization of the Pagan testimony, we are unable to accept characterization of the Pagan testimony, we are unable to accept its conclusion. its conclusion. In so construing the Pagan eyewitness account, the In so construing the Pagan eyewitness account, the district court failed to treat the evidence in the light most district court failed to treat the evidence in the light most favorable to Perez, the nonmoving party. See Acosta-Orozco, 132 favorable to Perez, the nonmoving party. See Acosta-Orozco, 132 _____ ___ _____________ F.3d at 98. Pagan did not unambiguously attest either that he F.3d at 98. Pagan did not unambiguously attest either that he saw the air bag inflate or while inflated, much less that it saw the air bag inflate or while inflated, much less that it stayed inflated. Rather, Pagan simply stated that just before stayed inflated. Rather, Pagan simply stated that just before the collision he observed that this [i.e., the Perez car] has the collision he observed that this [i.e., the Perez car] has ____ the air bag open. . . . 6 Thus, even assuming an air bag deploy- the air bag open. . . . Thus, even assuming an air bag deploy- _______  ____________________ The record contains a single page of the Pagan deposition, which Volvo did not choose to supplement: Q: Okay. When you see Mr. Perez before the accident, eh what was he doing? If you had the opportunity to see him. A: No. No I don t see him. Q: Okay. But you did see the automobile as it approached 6 ment cannot be detected by the human eye, fairly construed the ment cannot be detected by the human eye, fairly construed the ____ Pagan eyewitness account indicates that he saw the air bag Pagan eyewitness account indicates that he saw the air bag fully deployed that is, after it had inflated and deflated. fully deployed that is, after it had inflated and deflated. ________ ___ ________ Further, Pagan attested that he did not see the Further, Pagan attested that he did not see the driver of the Volvo, but never intimated that it was the air bag driver of the Volvo, but never intimated that it was the air bag ( fully inflated or otherwise) that obstructed his view of the ( fully inflated or otherwise) that obstructed his view of the driver. Whether this was because Perez was no longer upright in driver. Whether this was because Perez was no longer upright in the driver s seat after having been knocked unconscious during the driver s seat after having been knocked unconscious during the air bag deployment, or because, as Pagan also attested, the the air bag deployment, or because, as Pagan also attested, the Volvo was already zigzagging (i.e., Perez had already lost Volvo was already zigzagging (i.e., Perez had already lost ____ control), were material matters which required further control), were material matters which required further factfinding. Moreover, Perez also represented that two other factfinding. Moreover, Perez also represented that two other eyewitnesses, riding with Pagan, would corroborate Pagan s eyewitnesses, riding with Pagan, would corroborate Pagan s observations at trial. observations at trial.  ____________________ zigzagging? A: Yes. Q: Do you know why the automobile was zigzagging? If you know. A: Repeat the question, please. Q: Do you know the reason for which the automobile was zigzagging? If you know. For example: did it have something stuck in the axle of whatever? Or don t you know? A: Yes. The air bag. Q: The air bag? A: Yes. I see a the big bag and I see white smoke inside the car. I see that is the problem, I the first thing I say is in my mind, well, listen, this has the air bag open, that is  Q: Okay. That is, that when before the accident, or was it after the accident that you saw the air bag? A: No, before, before. 7 For its part, Volvo presented no evidence that an For its part, Volvo presented no evidence that an oncoming driver could not see an open (i.e., deployed and oncoming driver could not see an open (i.e., deployed and ____ deflated) air bag in these circumstances. Nor did Volvo under- deflated) air bag in these circumstances. Nor did Volvo under- mine the probativeness of the deposition testimony that Pagan mine the probativeness of the deposition testimony that Pagan simultaneously observed white smoke inside the [Perez] car,  simultaneously observed white smoke inside the [Perez] car,  presumably a reference to the release of white powder which presumably a reference to the release of white powder which normally accompanies an air bag deployment. In our view, there- normally accompanies an air bag deployment. In our view, there- fore, the eyewitness testimony from Pagan could not be dismissed fore, the eyewitness testimony from Pagan could not be dismissed as incredible without resorting to impermissible factfinding. as incredible without resorting to impermissible factfinding. See Abraham v. Nagle, 116 F.3d 11, 15 (1st Cir. 1997) ( It was See Abraham v. Nagle, 116 F.3d 11, 15 (1st Cir. 1997) ( It was ___ _______ _____ not, of course, [permissible] . . . to resolve credibility issues not, of course, [permissible] . . . to resolve credibility issues on summary judgment. ). on summary judgment. ). Next, Volvo suggests that it proffered other competent Next, Volvo suggests that it proffered other competent evidence the ADAR and the expert testimony from its employee, evidence the ADAR and the expert testimony from its employee, Schultz which was so conclusive that no rational factfinder Schultz which was so conclusive that no rational factfinder could credit the eyewitness deposition testimony from Pagan. could credit the eyewitness deposition testimony from Pagan. Volvo emphasizes, in particular, that the electrical circuits in Volvo emphasizes, in particular, that the electrical circuits in the air bag sensor burn out as soon as the bag deploys, rendering the air bag sensor burn out as soon as the bag deploys, rendering the sensor incapable of recording further impact data, and the sensor incapable of recording further impact data, and therefore that the sensor could not have recorded the Perez-Pagan therefore that the sensor could not have recorded the Perez-Pagan crash had the bag deployed prematurely.  crash had the bag deployed prematurely.  Nevertheless, the Volvo proffer did not rule out a Nevertheless, the Volvo proffer did not rule out a reasonable inference that for whatever reason, known or reasonable inference that for whatever reason, known or unknown the sensor may have received or recorded a false unknown the sensor may have received or recorded a false deceleration or impact reading, mistaken normal driving condi- deceleration or impact reading, mistaken normal driving condi- tions for a collision, and falsely stored that nonevent as a tions for a collision, and falsely stored that nonevent as a 8 [ low violence ] crash. Of course, Schultz did state, though [ low violence ] crash. Of course, Schultz did state, though without any factual predicate or explanation, that [a]n air bag without any factual predicate or explanation, that [a]n air bag sensor, even if defective, cannot, and will not, record informa- sensor, even if defective, cannot, and will not, record informa- tion of an accident that did not occur.  tion of an accident that did not occur.  We find particularly troubling Volvo s counterintuitive assumption that an electrical component cannot malfunction and ______ that its unfailing performance can be predicted with absolute certainty in any and all circumstances. True, Volvo was unable to induce another false reading from this sensor, but the ADAR in no way suggests that Volvo attempted to replicate the exact external conditions to which the sensor had been subjected in __ situ on August 10, 1993. Cf. Bogosian v. Mercedes-Benz of N.A., ____ ___ ________ ______________________ Inc., 104 F.3d 472, 480 (1st Cir. 1997) ( Where, as here, a ____ conclusion that a product was defective derives from a test or examination of it, there must be sufficient evidence to support a finding that the product was in substantially the same condition in relevant respects when tested as it was at the time of the accident. The absence of such a showing renders irrelevant any testimony based on the test or examination. ). Further, Volvo s sweeping assumption was placed in serious question by Perez. In its July 1994 written response to the NHTSA investigation of inadvertent air bag deployments, Volvo acknowledged that external conditions, such as exposure to humidity, might affect the performance of its air bag system, and that in some cases Volvo cannot reasonably determine why the 9 [alleged premature] deployment occurred. 7 See Abraham, 116 F.3d See Abraham, 116 F.3d ___ _______ at 15 (witness credibility normally a matter for factfinding); at 15 (witness credibility normally a matter for factfinding); see also Den Norske Bank AS v. First Nat l. Bank, 75 F.3d 49, 58 see also Den Norske Bank AS v. First Nat l. Bank, 75 F.3d 49, 58 ___ ____ __________________ _________________ (1st Cir. 1996). Thus, we cannot accept the contention that no (1st Cir. 1996). Thus, we cannot accept the contention that no rational factfinder could do other than reject the Pagan eyewit- rational factfinder could do other than reject the Pagan eyewit- ness testimony in light of the Volvo proffer. ness testimony in light of the Volvo proffer. Lastly, Volvo insists that a strict liability claimant Lastly, Volvo insists that a strict liability claimant cannot establish an unsafe defect in a product without expert or cannot establish an unsafe defect in a product without expert or scientific evidence. Since it does not affect our decision, we scientific evidence. Since it does not affect our decision, we accept arguendo Volvo s contention that the expert testimony accept arguendo Volvo s contention that the expert testimony ________  ____________________ We cite the NHTSA report only to demonstrate that Volvo s written responses to the NHTSA generate a trialworthy credibility issue in that they tend to refute Schultz s expert testimony that Volvo sensor readings are infallible. Since the 600-page NHTSA report was on microfilm, Perez proffered only a few transcribed pages, but made clear his willingness to produce the entire report to the district court on request. However, before dismissing the case, the district court instead decided to reserve for trial any question concerning the admissibility of the report on the defect issue. See supra note 4. As the ___ _____ proponent of the report, of course, Perez will need to satisfy the district court on remand that the reports of inadvertent deployments received from consumers by the NHTSA are not inadmissible hearsay. See, e.g., Fed. R. Evid. 803(8)(A) (public ___ ____ agency statements "in any form" setting forth "the activities of the office or agency" are not hearsay). Without regard to whether the entire NHTSA report is admissible, however, there presently appears no reason to believe at the summary judgment stage that the responses Volvo provided in the NHTSA investigation relied upon here could not be introduced as admissions of a party-opponent. See Fed. R. Evid. 801(d)(2). ___ Furthermore, Perez claims that the NHTSA investigation involved 1993 Volvo 900 models like the one Perez was driving on August 10, 1993, yet his abbreviated proffer dealt only with 1991 models. Since [t]he reports of other incidents would be probative evidence of the existence of a [] defect only if the incidents occurred under circumstances substantially similar to those surrounding [plaintiff s] accident, Cameron v. Otto Bock _______ __________ Orthopedic Indus., Inc., 43 F.3d 14, 16 (1st Cir. 1994), it would _______________________ remain for Perez to lay a proper evidentiary foundation for the latter evidence. 10 proffered by Perez would be inadmissible under Daubert v. Merrell proffered by Perez would be inadmissible under Daubert v. Merrell _______ _______ Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See supra note Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See supra note _________________________ ___ _____ 4. 4. The Supreme Court of Puerto Rico has yet to address The Supreme Court of Puerto Rico has yet to address this precise issue. Thus, we look to analogous state court this precise issue. Thus, we look to analogous state court decisions, persuasive adjudications by courts of [the] states, decisions, persuasive adjudications by courts of [the] states, learned treatises, and public policy considerations identified in learned treatises, and public policy considerations identified in state decisional law in order to make an informed prophecy of state decisional law in order to make an informed prophecy of how the [Puerto Rico Supreme Court] would rule. Rodriguez-Suris how the [Puerto Rico Supreme Court] would rule. Rodriguez-Suris _______________ v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). __________ Puerto Rico consistently has looked to the Restatement Puerto Rico consistently has looked to the Restatement (Second) of Torts 402A in defining its strict product liability (Second) of Torts 402A in defining its strict product liability doctrine. See Malave-Felix, 946 F.2d at 971; supra note 5. doctrine. See Malave-Felix, 946 F.2d at 971; supra note 5. ___ ____________ _____ Accordingly, asked to predict Puerto Rico law, we have consulted Accordingly, asked to predict Puerto Rico law, we have consulted the pertinent case law available in other jurisdictions which the pertinent case law available in other jurisdictions which likewise embrace the Restatement model.8 Our task in the present likewise embrace the Restatement model. Our task in the present context is straightforward. context is straightforward. Jurisdictions which model their decisional law along Jurisdictions which model their decisional law along Restatement lines uniformly hold that a strict liability claimant Restatement lines uniformly hold that a strict liability claimant _________ may demonstrate an unsafe defect through direct eyewitness may demonstrate an unsafe defect through direct eyewitness observation of a product malfunction, and need not adduce expert observation of a product malfunction, and need not adduce expert testimony to overcome a motion for summary judgment. See, e.g., testimony to overcome a motion for summary judgment. See, e.g., ___ ____  ____________________ See, e.g., Benitez-Allende v. Alcan Aluminio do Brasil, 857 ___ ____ _______________ ________________________ F.2d 26, 34 (1st Cir. 1988) (predicting Puerto Rico law in light of fact that Puerto Rico . . . has chosen to adopt the principles of strict liability laid out in Restatement (Second) of Torts 402A (1965) ); Guevara v. Dorsey Labs., 845 F.2d 364, _______ ____________ 365 (1st Cir. 1988) (same); McPhail v. Municipality of Culebra, _______ _______________________ 598 F.2d 603, 605 (1st Cir. 1979) (same). 11 Collazo-Santiago v. Toyota Motor Corp., 937 F. Supp. 134, 139 Collazo-Santiago v. Toyota Motor Corp., 937 F. Supp. 134, 139 ________________ ___________________ (D.P.R. 1996) (predicting that Puerto Rico courts would adopt (D.P.R. 1996) (predicting that Puerto Rico courts would adopt California law, where it is well settled that a plaintiff in a California law, where it is well settled that a plaintiff in a products liability action is entitled to present her case without products liability action is entitled to present her case without relying on the testimony of an expert witness ).9 Although it relying on the testimony of an expert witness ). Although it is helpful for a plaintiff to have direct evidence of the defec- is helpful for a plaintiff to have direct evidence of the defec- tive condition which caused the injury or expert testimony to tive condition which caused the injury or expert testimony to point to that specific defect, such evidence is not essential in point to that specific defect, such evidence is not essential in a strict liability case based on 402A [of the Restatement a strict liability case based on 402A [of the Restatement (Second) of Torts], " and direct observation of " [t]he malfunc- (Second) of Torts], " and direct observation of " [t]he malfunc- tion itself is circumstantial evidence of a defective condi- tion itself is circumstantial evidence of a defective condi-  ____________________ See, e.g., Woods v. General Motors Corp., No. 920516326S, ___ ____ _____ ____________________ 1996 WL 57016, at *3 (Conn. Super. Ct. Jan. 24, 1996) ( We conclude that in a product liability action, it is not necessary to present expert testimony to establish [a genuine factual dispute] that [a vehicle] was defective. ); Varady v. Guardian ______ ________ Co., 506 N.E.2d 708, 712 (Ill. App. Ct. 1987) (same, where ___ plaintiff testified that as she turned to her left with her crutches under her armpits, the left crutch collapsed, causing her to lose her balance and fall ); Virgil v. Kash n Karry  ______ _______________ Serv. Station, 484 A.2d 652, 656 (Md. Ct. Spec. App. 1984) (same, _____________ where plaintiff testified that a thermos bottle . . . implode[d] when coffee and milk [were] poured into it, since testimony would prove that the product fail[ed] to meet the reasonable expectations of the user ); Tune v. Synergy Gas Corp., 883 S.W.2d ____ _________________ 10, 14 (Mo. 1994) (en banc) (same); Falls v. Central Mut. Ins. _____ _________________ Co., 669 N.E.2d 560, 562 (Ohio Ct. App. 1995) (same, where ___ plaintiff attested that the seat belt came unfastened during the collision, despite expert s opinion that belt was not defective); Dansak v. Cameron Coca-Cola Bottling Co., 703 A.2d ______ _______________________________ 489, 496-97 (Pa. Super. Ct. 1997) (same, where plaintiff stated that [s]he opened the carton, removed a six-pack, and was cut by a broken bottle in the six-pack ); Sipes v. General Motors Corp., _____ ____________________ 946 S.W.2d 143, 154 (Tex. App. 1997) (same, where plaintiff contended that air bag failed to deploy, and defendant s expert contradicted) (citing McGalliard v. Kuhlmann, 722 S.W.2d 694 __________ ________ (Tex. 1986)); Potter v. Van Waters & Rogers, Inc., 578 P.2d 859, ______ _________________________ 865 (Wash. Ct. App. 1978) (same, where lay witnesses testified that rope was defective). 12 tion. Ducko v. Chrysler Motors Corp., 639 A.2d 1204, 1206 (Pa. tion. Ducko v. Chrysler Motors Corp., 639 A.2d 1204, 1206 (Pa. _____ _____________________ Super. Ct. 1994) (citations omitted). Thus, a manufacturer s own Super. Ct. 1994) (citations omitted). Thus, a manufacturer s own employee-expert does not necessarily trump a strict liability employee-expert does not necessarily trump a strict liability claimant s circumstantial non- expert evidence at the summary claimant s circumstantial non- expert evidence at the summary judgment stage. See id. at 1207 ( In granting [defendant s] judgment stage. See id. at 1207 ( In granting [defendant s] ___ ___ motion for summary judgment in the instant case, the trial court motion for summary judgment in the instant case, the trial court relied upon the deposition testimony and reports submitted by relied upon the deposition testimony and reports submitted by Chrysler's expert. This was error. [Plaintiff s] testimony of Chrysler's expert. This was error. [Plaintiff s] testimony of the erratic performance of the vehicle's steering and braking the erratic performance of the vehicle's steering and braking systems, under the circumstances of this case, was sufficient to systems, under the circumstances of this case, was sufficient to make out a prima facie case of a manufacturing defect in the make out a prima facie case of a manufacturing defect in the vehicle. The issue of strict liability, therefore, was a disput- vehicle. The issue of strict liability, therefore, was a disput- ed issue for the jury. ).10 Therefore, even if the expert ed issue for the jury. ). Therefore, even if the expert testimony proffered by Perez were to be excluded, see supra note testimony proffered by Perez were to be excluded, see supra note ___ _____ 3, the Pagan eyewitness testimony standing alone represent- 3, the Pagan eyewitness testimony standing alone represent- ed competent evidence that the air bag in the Perez Volvo had an ed competent evidence that the air bag in the Perez Volvo had an unsafe defect. See Sipes v. General Motors Corp., 946 S.W.2d unsafe defect. See Sipes v. General Motors Corp., 946 S.W.2d ___ _____ _____________________ 143, 154 (Tex. App. 1997) (noting that [t]he fact finder may 143, 154 (Tex. App. 1997) (noting that [t]he fact finder may accept lay testimony [that an air bag failed to deploy during accept lay testimony [that an air bag failed to deploy during  ____________________ Indeed, strict liability claimants may resort to an array of circumstantial evidence. See Dansak, 703 A.2d at 496 ( Such ___ ______ circumstantial evidence includes (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect. ). 13 frontal collision] over that of [defendants ] experts ).11  frontal collision] over that of [defendants ] experts ).  Of course, we express no opinion regarding the relative Of course, we express no opinion regarding the relative persuasiveness of the competing Rule 56 proffers, which is a persuasiveness of the competing Rule 56 proffers, which is a matter for the trier of fact. matter for the trier of fact. The district court judgment is VACATED and the case is The district court judgment is VACATED and the case is _______________________________________________________ remanded for further proceedings consistent herewith; costs to remanded for further proceedings consistent herewith; costs to _________________________________________________________________ appellant. SO ORDERED. appellant. SO ORDERED. _________ __________  ____________________ 11We consider only the caselaw defining the standard governing strict product liability claims, like the present, which allege unsafe manufacturing defects. We take no position in regard to the standard applicable to strict liability claims based on design defects, or product liability claims sounding in negligence. 14