Leila **MALAVE–FELIX**, et al.,
Plaintiffs, Appellants,

v.

**VOLVO CAR CORPORATION,** et al., Defendants, Appellees.

No. 91–1296.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1991.

Decided Oct. 16, 1991.

Federico Lora Lopez, Hato Rey, P.R., with whom Judith Berkan and Jose A. Lugo, Santurce, P.R., were on brief, for plaintiffs, appellants.

Manuel A. Guzman, with whom McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, Hato Rey, P.R., was on brief, for defendant, appellee, Volvo Car Corp.

Before SELYA, Circuit Judge, COFFIN and TIMBERS,* Senior Circuit Judges.

TIMBERS, Senior Circuit Judge:

Appellants, Dr. Leila Malave Felix and her husband, Jose Soto Martinez, ("Malave"), appeal from a judgment entered February 19, 1991 in the District of Puerto Rico, Jaime Pieras, Jr., *District Judge,* upon a directed verdict dismissing all claims against appellee Volvo Car Corporation ("Volvo").

Malave raises essentially two claims of error on appeal: (1) that she presented sufficient evidence to support her claim that Volvo was liable on a theory of negligence or strict liability for the manufacture

---

* Of the Second Circuit, sitting by designation.

of a defective product, and that the district court erred in granting Volvo's motion for a directed verdict; and (2) that the district court's conduct at the trial reflects bias in favor of Volvo.

For the reasons set forth below, we affirm the directed verdict dismissing all claims against appellee; and we find that the district court conducted the trial without bias.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. The facts are summarized in the light most favorable to Malave in order to help focus our review upon the propriety of a directed verdict.

On March 3, 1989, Malave finished her duties at the Ashford Presbyterian Community Hospital in Santurce, Puerto Rico, at approximately 11:00 p.m. She proceeded to the parking area where her car, a 1987 Volvo Turbo Intercooler manufactured by Volvo, a Swedish corporation, and sold to plaintiff by Volvo's authorized representative in Puerto Rico, Trebol Motors Corporation, was parked approximately ten feet in front of a wall. On her way to her car Dr. Malave noticed several people near an ambulance that was stopped, due to a tangled chain in one of the ambulance's tires, about seven to eight feet behind her car.

Rather than wait for the ambulance to move, Dr. Malave decided to perform an admittedly "tight maneuver" in order to leave. Upon entering the car, Dr. Malave put her seat-belt on, started the engine, turned on the lights, and looked in her rear view mirror (to see the people and ambulance behind her car). She then released the emergency brake, placed her foot on the brake pedal, and shifted into reverse. What happened next is not entirely clear.

Dr. Malave testified that while moving in reverse the car began to make a "slightly different noise" and started to go a little faster than she wanted. She stated that she then pressed the brake pedal, but the car would not stop; so she "pressed it harder and changed it to drive." In all, the car traveled backwards between three and four feet. After she shifted into drive Dr. Malave heard the car make a "big noise"; so she continued pressing harder on what she believed was the brake pedal. Instead of slowing down, the car speeded up and crashed into the wall in front of where her car had been parked. It is uncontroverted that, at the time her car crashed into the wall, Dr. Malave's foot was on the *accelerator*. As a result of the crash, Dr. Malave sustained a severe knee injury for which she seeks to recover damages.

Dr. Malave attempted to prove at trial, helped by the testimony of her expert witness, Mr. Rosenbluth, that her injuries were caused by defects in her car's idle air control valve and brakes boost check valve. Rosenbluth testified that he found the brakes boost check valve was manufactured incorrectly for its service life, causing it to fail. He further testified that the idle air control valve was inadequate and unreliable for its expected service life. The parts were warranted for 50,000 miles. Malave's car had run approximately 27,000 miles at the time of the accident.

The idle air control valve is an electrically operated shutter system that regulates the flow of air into an idling engine. It plays no role, however, if even moderate pressure is placed on the accelerator pedal. Rosenbluth testified that he found the presence of "arcing" (evidence of electrical discontinuity) and other irregularities in the idle air control valve that could cause the valve to remain open, and thereby increase the flow of air (and consequently the flow of fuel). The result would be a sudden surge or acceleration of the car's engine while it idled. According to Rosenbluth, a fully opened, defective idle air control valve could have caused Malave's car to accelerate, just prior to the accident, to a speed of one and three-fourths to three miles per hour while in reverse.

The brakes boost check valve creates a "booster reservoir" of negative air pressure (a vacuum) in the brake system that allows for limited power-brake operation (one to two steps on the pedal) when the

engine either dies or is turned off. Without the aid of the booster, the brakes still function as standard brakes, requiring the exertion of greater pressure on the brake pedal (about twice as much as with power brakes). Rosenbluth testified that he found the brakes boost check valve to be defective because it allowed air back into the booster reservoir, thereby destroying the vacuum necessary to provide power-braking after the car's engine had died or had been turned off. Moments after an engine is turned on, the brakes boost check valve is no longer needed because a continuous vacuum is created in the brake booster which allows the power brakes to function properly. It requires two or three seconds after a car is turned on for it to attain a fully charged booster; a partial charge is attained in one and one-half to two seconds.

Rosenbluth speculated that malfunctions in the idle air valve and brakes boost check valve caused Malave's car to accelerate when she put it in reverse and while the power brakes were still not fully functioning. He thought that these malfunctions caused Dr. Malave to make the consequential error of pressing the accelerator, thus propelling her car forward into the wall. That is the inference that Malave wanted a jury to make so that she could recover in this action based on the theory of negligence or strict liability.

On the fourth day of this five-day trial (during which eleven witnesses testified) the judge, at a bench conference, once referred to Malave's expert witness, Rosenbluth, as a "come-for-hire expert" and later called him "Mr. So and So". The court also ruled that Rosenbluth could not testify as to the human and mental factors that may have caused the accident, since the court believed such matters were beyond the scope of his expertise. Malave argues that this unfavorable treatment of Rosenbluth, together with two adverse evidentiary rulings (that Malave admits are insufficient alone to sustain the appeal), is conduct sufficient to warrant a finding that the district court's conduct of the trial reflects bias in favor of Volvo.

When Malave concluded her case, Volvo made a motion for a directed verdict. After finding that there was insufficient evidence to support a reasonable inference by the jury that Volvo was the proximate cause of Malave's injuries, the court granted the motion.

On appeal, Malave essentially contends (1) that she presented sufficient evidence to have reached the jury on her claim that Volvo was liable for negligence or strict liability; and (2) that the district court's conduct at the trial reflects bias in favor of Volvo.

## II.

Volvo is a Swedish corporation. The car in question, a 1987 Volvo Turbo Intercooler, was manufactured by Volvo and was sold to Dr. Malave, a citizen of Puerto Rico, through Volvo's authorized representative in Puerto Rico, Trebol Motors Corporation. This action was properly commenced in the District Court of Puerto Rico based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1988). The law of Puerto Rico provides the law of decision in this case. *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938). We must make a *de novo* determination of the applicable Puerto Rico law. *Salve Regina College v. Russell,* 111 S.Ct. 1217, 1225 (1991).

### A. Directed Verdict

■ When reviewing a directed verdict, we examine the evidence and inferences reasonably extractable therefrom in the light most favorable to the nonmovant. *Lubanski v. Coleco Indus.,* 929 F.2d 42, 48 (1st Cir.1991). To affirm a directed verdict, we must find that, so viewed, the evidence would permit thoughtful factfinders to reach but one conclusion in favor of the moving party. *Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076, 1088 (1st Cir. 1989). We may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. *Lubanski, supra,* 929 F.2d at 48. Nevertheless, a "mere scintilla of evidence" is not enough to forestall a directed verdict on a claim for which the burden of proof

rests with the objecting party. *Fashion House, supra,* 892 F.2d at 1088. The plaintiff may not rely on conjecture or speculation, but rather the evidence offered must make the existence of the fact to be inferred more probable than its nonexistence. *Goldstein v. Kelleher,* 728 F.2d 32, 39 (1st Cir.1984).

### B. Puerto Rico law

Malave has commenced this action on the alternative theories of negligence and strict liability.

Negligence has been defined by the Commonwealth courts as the failure to exercise due diligence to avoid foreseeable risks. *Jimenez v. Pelegrina,* 112 D.P.R. 700 (1982) (12 Official Translations of the Opinions of the Supreme Court of Puerto Rico 881, 886). To recover on a theory of negligence, Malave must show that negligent acts or omissions of Volvo caused her injuries. *Valle v. American Int'l Insur. Co.,* 108 D.P.R. 692 (1979) (8 Official Translations of the Opinions of the Supreme Court of Puerto Rico 735, 738); *Widow of Delgado v. Boston Insur. Co.,* 99 P.R.R. 693, 703 (1971).

■ As to strict liability, Puerto Rico has adopted the principles set forth in *Restatement (Second) of Torts* § 402A (1965), *Mendoza v. Cerveceria Corona, Inc.,* 97 P.R.R. 487, 495–96 (1969), with the exception that it has rejected the "unreasonably dangerous" requirement of § 402A. *Montero Saldana v. American Motors Corp.,* 107 D.P.R. 452 (1978) (7 Official Translations of the Opinions of the Supreme Court of Puerto Rico 501, 508–09). A manufacturer is liable in tort on a theory of strict liability when it places a product on the market, knowing that it is to be used without inspection for defects, and it has a defect that *causes* injuries. *Id.* at 508 (citing *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897 (1962)) (emphasis added).

Thus, to have survived a motion for a directed verdict on a theory of negligence or strict liability, Malave must have established that the defective automobile valves were the cause of her injuries. *Mendoza,* *supra,* 97 P.R.R. at 499 ("If the damage is not attributable to a defect of the product, there is no ground for applying the strict liability rule."); *see also Montero Saldana, supra,* 7 P.R.S.Ct. Official Translations at 508. Puerto Rico defines legal "cause" as "proximate cause", rather than actual or natural cause. *Jimenez, supra,* 12 P.R.S.Ct. Official Translations at 887. (An actual or natural cause, which is generally determined by the "But for" test of causality, Prosser, *Law of Torts* 238–39 (4th ed. 1971), is "any of the conditions necessary to produce the injury". *Jimenez, supra,* 112 P.R.S.Ct. Official Translations at 887.)

### III.

#### A. Proximate cause

■ We turn next to the appropriate standard for determining proximate cause under the law of Puerto Rico. Commonwealth cases recognize the difference between "fault" and "causation", *Jimenez, supra,* 12 P.R.S.Ct. Official Translations at 885; *Widow of Delgado, supra,* 99 P.R.R. at 700, but the two concepts are closely related. An actor is at fault, or negligent, when he fails to exercise due diligence to prevent foreseeable injury. *Jimenez, supra,* 12 P.R.S.Ct. Official Translations at 886; *Pacheco v. Puerto Rico Water Resources Auth.,* 112 D.P.R. 296 (1982) (12 Official Translations of the Opinions of the Supreme Court of Puerto Rico 369, 372). One becomes liable, however, only if his negligence is the proximate cause of someone else's injuries. *Widow of Delgado, supra,* 99 P.R.R. at 703. A person can act negligently (i.e. fail to act reasonably to prevent foreseeable harm) and yet escape liability if his negligent act fortuitously does not cause injury to another. *Jimenez, supra,* 12 P.R.S.Ct. Official Translations at 886; *Hernandez v. The Capital,* 81 P.R.R. 998, 1005 (1960).

■ As we stated in *Marshall v. Perez Arzuaga,* 828 F.2d 845 (1st Cir.1987), proximate cause also is defined in terms of foreseeability. *Id.* at 847–48. A person is liable for injuries that a prudent person reasonably could anticipate. *Id.* at 847 (cit-

ing *Pacheco, supra,* 12 P.R.S.Ct. Official Translations at 372); *Jimenez, supra,* 12 P.R.S.Ct. Official Translations at 888. The rule of foreseeability does not require that the precise risk or exact result that occurred should have been foreseen; rather, the essential factor is that a person should have foreseen consequences of the general kind that occurred. *Gines v. Puerto Rico Aqueduct & Sewer Auth.,* 86 P.R.R. 490, 495 (1962); *Hernandez, supra,* 81 P.R.R. at 1009. Intervening causes can break the chain of causality if they are not foreseeable. *Gines, supra,* 86 P.R.R. at 495; *Widow of Andino v. Puerto Rico Water Resources Auth.,* 93 P.R.R. 168, 178 (1966). An "intervening cause" is defined as "a cause of injury that 'comes into active operation in producing the result after the actor's negligent act or omission has occurred.'" *Marshall, supra,* 828 F.2d at 848 (quoting *Widow of Andino, supra,* 93 P.R.R. at 178). Thus, in a negligence action, foreseeability provides the linchpin both for determining the duty of an actor and for determining his liability for the breach of that duty.

■ In an action based on a theory of strict liability, foreseeability is not necessary to a determination of the defendant's duty (a manufacturer's duty is not limited to acting diligently to prevent unreasonable risks; rather, a manufacturer's duty is to manufacture and put into commerce goods that are free of defects, *Montero Saldana, supra,* 7 P.R.S.Ct. Official Translations at 508 (citing *Greenman, supra,* 59 Cal.2d 57); *see also Restatement (Second) Torts* § 402A at 349–50 (1965)), but it is still essential to defining the scope of a manufacturer's liability when defective goods are put into the stream of commerce. A manufacturer is not an insurer of all injuries stemming from the use of its products, *Mendoza, supra,* 97 P.R.R. at 499 (1969), and is liable only for damages that are a reasonably foreseeable consequence of putting the defective goods on the market. *Id.; see also Montero Saldana, supra,* 7 P.R.S.Ct. Official Translations at 508.

## B. Standard Applied

■ We turn now to a consideration of whether Malave presented sufficient evidence in support of her claim that Volvo proximately caused her injuries, i.e. whether the district court erred in not allowing the issue to go to the jury. We hold that the district court did not err. We affirm the court's granting a directed verdict in favor of Volvo.

Malave primarily relies on her own testimony and that of Rosenbluth, her expert witness, to establish the requisite causation. Their combined testimony provides some basis for a reasonable inference that the idle air valve malfunctioned, causing an increase in the car's speed as Malave was backing up (though not to a speed above three miles per hour). Their testimony also permits a reasonable inference that the brakes boost check valve was not working properly. Although Rosenbluth also testified that malfunctions in both the idle air control valve and the brakes boost check valve caused Malave to make the consequential error of stepping on the accelerator, that claim is nothing more than speculation; it cannot support a finding of proximate cause. *Saez v. Municipality,* 84 P.R.R. 515, 523 (1962); *Delgado, supra,* 99 P.R.R. at 703.

Rosenbluth acknowledged that, even if the brakes boost check valve was not working, the brakes still would function; Dr. Malave only would have had to press harder on the brakes. Moreover, Rosenbluth admitted that the brake booster begins to be recharged as soon as the engine is turned on. After just one and one-half to two seconds the booster is partially charged; and after two to three seconds the booster is fully charged. A reasonable juror would have had to conclude that the brake booster was at least partially charged when Malave attempted to stop or slow down while in reverse. To stop her car, Malave only had to press the brakes with less than twice the pressure that is required with fully operating power brakes. Since a failed idle air control valve could have resulted, at most, in an acceleration up to three miles per hour, a reason-

able person would have had to infer that Malave could have stopped or slowed the car if she had stepped on the brakes.

Volvo could be held to have proximately caused Malave's injuries only if it was reasonably foreseeable that a defective idle air control valve and brakes boost check valve would have caused a driver to throw the car into drive and slam on the accelerator (as Malave apparently did) rather than press a little harder on the brakes (as Malave apparently did not). *Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir. 1987). Based on the evidence, a reasonable juror could have concluded only that Malave's driver error was an unforeseeable intervening cause, and that the defective automobile valves therefore were not the proximate cause of her injuries. Malave did not present more than a scintilla of evidence to support her contention that Volvo was the proximate cause of the accident. The district court did not invade the province of the jury in making that determinaton.

### IV.

■ Malave asserts that the trial judge's conduct at the trial was biased in favor of Volvo. In order to grant a new trial on the grounds of bias and improper conduct, we would have to hold that a party "was so seriously prejudiced as to be deprived of a fair trial." *Aggarwal v. Ponce School of Medicine*, 837 F.2d 17, 21–22 (1st Cir.1988). Charges of bias should not be based on a few isolated comments, but rather on the record as a whole. *United States v. Polito*, 856 F.2d 414, 418 (1st Cir.1988).

■ In support of her charge of bias, Malave points first to the district judge's exclusion of testimony by her expert witness, Rosenbluth, as to how the alleged defects in the automobile may have caused Malave to step on the accelerator rather than the brake pedal. The district judge determined that Rosenbluth's expertise (he was qualified as an expert in automobile systems) did not extend to the mental processes and human factors that may have caused the accident. The district judge has

broad discretion in determining the scope of an expert witness's testimony. *Marshall, supra*, 828 F.2d at 851 (the trial judge's decision will not be reversed unless there is a showing of clear error). Perhaps recognizing this, Malave does not argue that the district judge's exclusion of such testimony constitutes reversible error, but she claims only that the judge's ruling demonstrates bias in favor of Volvo. Similarly, in support of her claim of bias, Malave points to the district judge's exclusion, under Federal Rule of Evidence 403, of documentary evidence pertaining to idle air control valves on the grounds that such documents were irrelevant and prejudicial. Once again, however, Malave implicitly acknowledges the broad discretion a trial judge has in determining whether to exclude evidence under Rule 403. The district judge clearly was acting within his discretion when he limited the scope of Rosenbluth's testimony, and when he refused to admit the documents pertaining to idle air control valves. The court's exercise of its discretion on these two occasions clearly does not establish that the district court was biased against Malave.

Lastly, Malave points to the district judge's treatment of Rosenbluth as an indication of his bias. The judge once referred to Rosenbluth as a "come-for-hire expert" during a bench conference, and moments later addressed him as "Mr. So and So" when calling him to approach the bench. These references by the judge arguably might be stretched to imply some hostility toward Malave's expert witness. Derogatory comments directed at a witness by a judge potentially may undermine a witness's credibility in the eyes of the jury. The judge's treatment of Rosenbluth, however, amounts at most to a few isolated incidents of questionable conduct. Viewing the record as a whole, it is clear that Malave was not denied a fair trial. Her charge of bias lacks merit.

### V.

To summarize:

The district court's granting of Volvo's motion for a directed verdict is affirmed. Malave failed to present substantial evidence that would permit a finding by a reasonable person that Volvo was the proximate cause of her injuries. Moreover, Malave's charge of bias on the part of the district judge lacks merit.

Affirmed.