USCA1 Opinion

 

 June 1, 1992 [NOT FOR PUBLICATION] _________________________ No. 91-2318 ALBERT M. CHURILLA, JR., ETC., ET AL., Plaintiffs, Appellants, v. WACHUSETT MOUNTAIN ASSOCIATES, INC., ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Pettine,* Senior District Judge. _____________________ _________________________ William C. Flanagan, with whom Edward J. McDonough, Jr. and ___________________ _________________________ Egan, Flanagan and Cohen, P.C., were on brief, for appellants. ______________________________ L. Jeffrey Meehan, with whom Claire L. Thompson and Doherty, _________________ __________________ ________ Wallace, Pillsbury and Murphy, P.C., were on brief, for appellee ___________________________________ R.H. White Construction Co., Inc. _________________________ _________________________ _______________ *Of the District of Rhode Island, sitting by designation. Per Curiam. This is a diversity suit brought by Albert __________ M. Churilla, Jr. and Frances A. Churilla, parents of Teresa Churilla and personal representatives of her estate. Teresa, then age 19, was killed in a skiing accident that took place on January 31, 1986. Her parents sued. The defendants included the owners and operators of the ski facility (Wachusett Mountain Associates, Inc. and Joseph O'Brien); the designer of the ski slopes (Sno-Engineering, Inc.), and the construction company that rehabilitated the trail on which the accident occurred (R.H. White Construction Company). The plaintiffs' claims against all the defendants were consolidated for trial.1 At the close of all the evidence, the district court granted White's motion for a directed verdict. See Fed. R. Civ. P. 50(a). The court stated: ___ It's a matter of legal responsibility. Legal responsibility here depends upon the relations of the parties. The relation of White . . . was subordinate, subordinate in a way that was perfectly understandable on this evidence for a contractor to function. You're dealing with a particular kind of construction project with an expert architect/designer who is largely directing the[] efforts. There's no showing that there was brought to [White's] attention at any time any reasonable suggestion of danger by creating this particular condition even if [White] could be charged with creating it. So, as a matter of law . . . I will grant the motion for directed verdict for White. The plaintiffs appeal. Their sole assignment of error questions the propriety of the directed verdict in White's favor. ____________________ 1The plaintiffs settled with Sno-Engineering during the trial. Their case against Wachusett Mountain Associates and O'Brien went to verdict. 2 The yardstick by which we must gauge the assigned error is well hewn: When directed verdicts have been granted, we must examine the evidence and the inferences reasonably extractable therefrom in the light most hospitable to the nonmovant. To affirm withdrawal of any claim from the jury, we must find that, so viewed, the evidence would permit thoughtful factfinders to reach but one reasoned conclusion. See Wagenmann v. ___ _________ Adams, 829 F.2d 196, 200 (1st Cir. 1987). In _____ performing this tamisage, an appellate court "may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Id. ___ Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1088 (1st ____________________ _____________ Cir. 1989). In this case, we have had the benefit of excellent briefs on both sides. We have also heard oral argument, read the trial transcript with care, perused the various exhibits, and screened the videotape that was shown to the jury. Based on our review and study of these materials, we cannot fault the district court's assessment. The uncontradicted evidence showed that White, although retained as the general contractor for the renovation of the ski area,2 had never before been involved in ski area construction. It had no special expertise in the field. Sno, on the other hand, was described at trial as "the foremost design company for ski areas in the world." The evidence also showed that Sno prepared the overall plan for creating new ski trails and for modifying existing trails at Wachusett Mountain; devised the ____________________ 2The renovations in question were begun in the summer of 1982. While the actual work on the ski trails themselves was done by subcontractors, we assume, for argument's sake, that White's duty of care was nondelegable and we therefore treat White as if it performed the work directly. 3 trail markings; approved the lighting system; and supervised all construction. Sno's employee, Ford Hubbard, "flagged" and "center-lined" the trails to be cut; oversaw the clearing and grading activities; provided daily on-site superintendence; set the final boundaries of the ski trails; and determined their characteristics. In a nutshell, the evidence demonstrated conclusively that, by contract and in fact, White danced to Sno's tune. Under Massachusetts law, an all-purpose building contractor with no expertise in a particular type of construction is warranted, generally, "in relying on the advice of the various engineering consultants employed on th[e] project." United ______ States v. Boston Steel Erection, Inc., 367 F. Supp. 699, 706 (D. ______ ___________________________ Mass. 1973). Put more directly, such a contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury. Romano v. Rossano Constr. Co., 171 N.E.2d 853, 856 (Mass. 1961) ______ ____________________ (quoting Ryan v. Feeney & Sheehan Bldg. Co., 145 N.E. 321, 322 ____ ___________________________ (N.Y. 1924)). Measured against this standard, we, like the district court, are unable to find any significantly probative evidence of actionable negligence on White's part. Even if a dangerous condition existed on Trail No. 7 at the time of Teresa's death, White could not be held answerable for it. The plaintiffs did not prove any special standard of care in ski area construction that reflected adversely upon White's performance. They offered 4 no expert testimony implicating White. They did not prove that White's workmanship was defective. They did not show that White deviated from Sno's design or ignored Sno's instructions. They did not adduce any evidence that the average contractor, standing in White's shoes, would have had sufficient knowhow to quarrel with Sno's directions or to conclude that Trail No. 7 was dangerous enough to create a risk of injury above and beyond that ordinarily inherent in downhill skiing. On this record, reasonable persons could not have found White negligent without resorting to arrant speculation and impermissible surmise. Given our evaluation of the record, it would serve no useful purpose to plough through the factual underpinnings of the case. It suffices to say that when, as here, appellants have the burden of proving negligence, "the evidence to which the[y] point[] must comprise more than fragmentary tendrils." Fashion _______ House, 892 F.2d at 1088. See also Anderson v. Liberty Lobby, _____ ___ ____ ________ _______________ Inc., 477 U.S. 242, 249 (1986) ("there is no issue for trial ____ unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); Malave-Felix v. ____________ Volvo Car Corp., 946 F.2d 967, 970-71 (1st Cir. 1991) (similar). ________________ In this instance, the plaintiffs' evidence, viewed most favorably to them, was at most colorable, ergo, insufficient. Hence, the district judge did not err in directing a verdict. Notwithstanding our conclusion that the plaintiffs' appeal lacks merit, our task is not ended. We must go further and consider appellee's motion for imposition of appellate sanctions. The fact that an appeal is unsuccessful does not, in itself, call for resort to Fed. R. App. P. 38, 28 U.S.C. 1927, 5 or any other source of sanctions. Here, given the factually complex nature of the case and the stringencies that Rule 50(a) imposes on the district courts, we are not prepared to say that plaintiffs or their counsel acted unreasonably in attempting to persuade an appellate tribunal that the judge had scrutinized the proof too grudgingly and thereby overstepped his bounds. Thus, we deny the motion. The judgment below is affirmed. The appellee's motion The judgment below is affirmed. The appellee's motion ______________________________ ______________________ for appellate sanctions is denied. Ordinary costs shall be taxed for appellate sanctions is denied. Ordinary costs shall be taxed _________________________________ _____________________________ in appellee's favor. in appellee's favor. ___________________ 6