UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 97-1792

GENEROSO PEREZ-TRUJILLO,

Plaintiff, Appellant,

v.

VOLVO CAR CORPORATION (SWEDEN),

Defendant, Appellee.

 

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jos Antonio Fust , U.S. District Judge] 

 

Before

Lynch, Circuit Judge, 

Cyr, Senior Circuit Judge, 

and DiClerico*, District Judge. 

 

Eduardo M. Joglar, with whom Esther Cresp n Credi and Law Offices 
of Eduardo M. Joglar were on brief for appellant. 
Carlos A. Steffens, with whom Manuel A. Guzm n and Manuel A. 
Guzm n Law offices were on brief for appellee. 

 

March 5,1998
 

 

*Of the District of New Hampshire, sitting by designation.

CYR, Senior Circuit Judge. Plaintiff Generoso Perez- CYR, Senior Circuit Judge.  

Trujillo [ Perez ] challenges a district court order awarding

summary judgment to defendant Volvo Car Corporation (Sweden)

[ Volvo ] in this strict product liability action. We reverse

and remand for further proceedings.

I I

BACKGROUND1 BACKGROUND 

On August 10, 1993, Perez was operating a new 1993 On August 10, 1993, Perez was operating a new 1993

Volvo 940 GL381 along a smooth, straight roadway in Bayamon, Volvo 940 GL381 along a smooth, straight roadway in Bayamon,

Puerto Rico, when the air bag on the driver s side prematurely Puerto Rico, when the air bag on the driver s side prematurely

deployed, causing him to lose consciousness and collide with an deployed, causing him to lose consciousness and collide with an

oncoming vehicle driven by Alexis Pagan Marrero [ Pagan ]. Perez oncoming vehicle driven by Alexis Pagan Marrero [ Pagan ]. Perez

sustained a permanent cervical disc herniation. sustained a permanent cervical disc herniation.

Just before the collision, Pagan had seen the Perez Just before the collision, Pagan had seen the Perez

vehicle "zigzagging" and observed a "big [air] bag" and "white vehicle "zigzagging" and observed a "big [air] bag" and "white

smoke" in the driver's compartment. After the accident, the air smoke" in the driver's compartment. After the accident, the air

bag sensor, which monitors the rate of vehicle deceleration, was bag sensor, which monitors the rate of vehicle deceleration, was

sent to Volvo for testing.2 sent to Volvo for testing.

The air bag is designed to inflate and deflate within The air bag is designed to inflate and deflate within

one-fifth of a second, an event undetectable by the human eye. one-fifth of a second, an event undetectable by the human eye.

During deployment, the diagnostic unit in the sensor records the During deployment, the diagnostic unit in the sensor records the
 

We relate the background facts in the light most favorable
to Perez, the nonmoving party. See Acosta-Orozco v. Rodriguez- 
de-Rivera, 132 F.3d 97, 98 (1st Cir. 1997). 

2Should it detect a rate of frontal deceleration beyond
preset tolerances the deployment threshold the sensor
transmits an electrical signal to the ignitor located within the
air bag inflator, causing an ignition which instantaneously fills
the air bag with nitrogen gas.

2

actual vehicle deceleration rate, the status of the battery actual vehicle deceleration rate, the status of the battery

powering the air bag, and any fault codes. Following deployment, powering the air bag, and any fault codes. Following deployment,

the electrical circuits in the sensor burn out and cannot record the electrical circuits in the sensor burn out and cannot record

further data. further data.

The air bag deployment analysis report [ ADAR ] subse- The air bag deployment analysis report [ ADAR ] subse-

quently issued by Volvo reflected that the sensor had recorded a quently issued by Volvo reflected that the sensor had recorded a

[ low violence ] crash, normal battery status, with no fault [ low violence ] crash, normal battery status, with no fault

codes indicating abnormal functioning. Based on these data, codes indicating abnormal functioning. Based on these data,

Bengt Schultz, a qualified air bag expert employed by Volvo, Bengt Schultz, a qualified air bag expert employed by Volvo,

concluded that the air bag must have deployed after, rather than concluded that the air bag must have deployed after, rather than

before, the collision. before, the collision.

Perez brought suit against Volvo in federal district Perez brought suit against Volvo in federal district

court, asserting a strict product liability claim based on the court, asserting a strict product liability claim based on the

theory that the Perez injury was proximately caused by the air theory that the Perez injury was proximately caused by the air

bag system, which had been defective when it left the Volvo bag system, which had been defective when it left the Volvo

factory. Volvo moved for summary judgment, in reliance on the factory. Volvo moved for summary judgment, in reliance on the

ADAR and the expert testimony presented by its employee, Schultz. ADAR and the expert testimony presented by its employee, Schultz.

Perez responded with (1) eyewitness deposition testimony from Perez responded with (1) eyewitness deposition testimony from

Pagan; (2) an affidavit from Luis Diaz Gandia, a putative air bag Pagan; (2) an affidavit from Luis Diaz Gandia, a putative air bag

expert;3 and (3) the written responses Volvo provided in July expert; and (3) the written responses Volvo provided in July

1994 to a National Highway Traffic Safety Administration 1994 to a National Highway Traffic Safety Administration

[ NHTSA ] investigation, in which Volvo could not explain what [ NHTSA ] investigation, in which Volvo could not explain what

caused several so-called "inadvertent [Volvo air bag] deploy- caused several so-called "inadvertent [Volvo air bag] deploy-
 

Diaz, a professor of electrical engineering, attested that
insurance industry studies have indicated that non-collision,
inadvertent air bag deployments occur in about 6 out of every
75,000 deployments, and that an air bag sensor s performance may
be diminished by adverse external factors such as humidity.

3

ments" reported to the NHTSA. ments" reported to the NHTSA.

The district court ultimately awarded summary judgment The district court ultimately awarded summary judgment

to Volvo, for the following reasons.4 First, the court consid- to Volvo, for the following reasons. First, the court consid-

ered intrinsically incredible the Pagan eyewitness testimony that ered intrinsically incredible the Pagan eyewitness testimony that

the air bag had inflated and stayed inflated, given the uncon- the air bag had inflated and stayed inflated, given the uncon-

troverted expert testimony that air bags inflate and deflate too troverted expert testimony that air bags inflate and deflate too

rapidly for the human eye to detect. Second, the ADAR and the rapidly for the human eye to detect. Second, the ADAR and the

expert testimony from Schultz conclusively refuted the Pagan expert testimony from Schultz conclusively refuted the Pagan

eyewitness testimony, since the sensor is designed to stop eyewitness testimony, since the sensor is designed to stop

recording data once the air bag deploys, and therefore a prema- recording data once the air bag deploys, and therefore a prema-

ture deployment would have disabled the sensor from recording the ture deployment would have disabled the sensor from recording the

subsequent collision. Finally, the district court noted that subsequent collision. Finally, the district court noted that

Perez presented no competent scientific information to demon- Perez presented no competent scientific information to demon-

strate that the air bag had functioned differently from any strate that the air bag had functioned differently from any

other produced by Volvo in that year, nor any scientific other produced by Volvo in that year, nor any scientific

explanation how the air bag in question malfunctioned or was explanation how the air bag in question malfunctioned or was

poorly designed. Thereafter, the court denied the motion for poorly designed. Thereafter, the court denied the motion for

reconsideration submitted by Perez. See Fed. R. Civ. P. 59(e). reconsideration submitted by Perez. See Fed. R. Civ. P. 59(e). 

II II

DISCUSSION DISCUSSION 

We review the summary judgment ruling de novo, viewing 
 

Although the district court had noted its own serious
reservations regarding the admissibility of the proffered expert
testimony from Diaz and the NHTSA investigative report, see infra 
note 7, its dismissal order was not predicated on any evidentiary
exclusion. Instead, the court simply discounted the weight to be 
accorded the proffered expert testimony from Diaz. The court
opined that Diaz had provided [only] a scientific veneer, based
on no testing or studies. See infra at p. 10 (referencing 
Daubert). 

4

all disputed facts and reasonable inferences favorably to Perez,

the nonmoving party. See Acosta-Orozco v. Rodriguez-de-Rivera, 

132 F.3d 97, 98 (1st Cir. 1997). The summary judgment ruling

cannot stand unless Perez failed to adduce sufficient competent

evidence to generate a trialworthy issue as to some element

essential to his case. See FDIC v. Elder Care Servs., Inc., 82 

F.3d 524, 526 (1st Cir. 1996) (citing Celotex Corp. v. Catrett, 

477 U.S. 317, 322-23 (1986)).

Under Puerto Rico law, Perez must prove four essential

elements; viz. (1) the Volvo air bag had a manufacturing defect  

of which Perez was unaware, (2) the defect made the air bag

system unsafe, 5 (3) the usage to which the air bag was put by (3) the usage to which the air bag was put by

Perez was reasonably foreseeable by Volvo, and (4) the defect Perez was reasonably foreseeable by Volvo, and (4) the defect

proximately caused injury to Perez. See Rivera Santana v. proximately caused injury to Perez. See Rivera Santana v. 

Superior Packaging Inc., No. 89-593, 1992 WL 754830, at *4 (P.R. Superior Packaging Inc., No. 89-593, 1992 WL 754830, at *4 (P.R. 

Dec. 9, 1992); see also Malave-Felix v. Volvo Car Corp., 946 F.2d Dec. 9, 1992); see also Malave-Felix v. Volvo Car Corp., 946 F.2d 

967, 971 (1st Cir. 1991). Given satisfactory proof of these four 967, 971 (1st Cir. 1991). Given satisfactory proof of these four

essential elements Volvo would be strictly liable even though the essential elements Volvo would be strictly liable even though the

air bag was manufactured with reasonable care and regardless air bag was manufactured with reasonable care and regardless

whether Perez owned the Volvo. See Restatement (Second) of Torts whether Perez owned the Volvo. See Restatement (Second) of Torts 

402A. Only the first and second elements are at issue here. 402A. Only the first and second elements are at issue here.
 

The Puerto Rico courts generally embrace the principles of
strict product liability prescribed in the Restatement (Second)
of Torts 402A. See Malave-Felix v. Volvo Car Corp., 946 F.2d 
967, 971 (1st Cir. 1991) (citing Mendoza v. Cerveceria Corona, 
Inc., 97 P.R.R. 487, 495-96 (1969)). The unsafeness criterion 
is the single significant departure, as it further relaxes the
claimant s burden, under the Restatement, of proving that the
defective product was "unreasonably dangerous." See id. (citing 
Montero Saldana v. American Motors Corp., 107 D.P.R. 452 (1978)). 

5

As to the first element, a manufacturing defect is As to the first element, a manufacturing defect is

present if the product differs from the manufacturer s intended present if the product differs from the manufacturer s intended

result or from other ostensibly identical units of the same result or from other ostensibly identical units of the same

product line. Rivera Santana, No. 89-593, 1992 WL 754830, at *5 product line. Rivera Santana, No. 89-593, 1992 WL 754830, at *5 

n.7. Volvo does not deny that competent proof of an air bag n.7. Volvo does not deny that competent proof of an air bag

deployment prior to a frontal collision would establish the deployment prior to a frontal collision would establish the 

requisite unsafe defect. Volvo insists, however, that the requisite unsafe defect. Volvo insists, however, that the

district court correctly dismissed, as incredible, the proffered district court correctly dismissed, as incredible, the proffered

testimony that Pagan saw the air bag inflated, since it is testimony that Pagan saw the air bag inflated, since it is

undisputed that the human eye cannot perceive the inflation- undisputed that the human eye cannot perceive the inflation-

deflation event. Since we cannot agree with the district court s deflation event. Since we cannot agree with the district court s

characterization of the Pagan testimony, we are unable to accept characterization of the Pagan testimony, we are unable to accept

its conclusion. its conclusion.

In so construing the Pagan eyewitness account, the In so construing the Pagan eyewitness account, the

district court failed to treat the evidence in the light most district court failed to treat the evidence in the light most

favorable to Perez, the nonmoving party. See Acosta-Orozco, 132 favorable to Perez, the nonmoving party. See Acosta-Orozco, 132 

F.3d at 98. Pagan did not unambiguously attest either that he F.3d at 98. Pagan did not unambiguously attest either that he

saw the air bag inflate or while inflated, much less that it saw the air bag inflate or while inflated, much less that it

stayed inflated. Rather, Pagan simply stated that just before stayed inflated. Rather, Pagan simply stated that just before

the collision he observed that this [i.e., the Perez car] has the collision he observed that this [i.e., the Perez car] has 

the air bag open. . . . 6 Thus, even assuming an air bag deploy- the air bag open. . . . Thus, even assuming an air bag deploy- 
 

The record contains a single page of the Pagan deposition,
which Volvo did not choose to supplement:

Q: Okay. When you see Mr. Perez before the
accident, eh what was he doing? If
you had the opportunity to see him.
A: No. No I don t see him.
Q: Okay. But you did see the
automobile as it approached

6

ment cannot be detected by the human eye, fairly construed the ment cannot be detected by the human eye, fairly construed the 

Pagan eyewitness account indicates that he saw the air bag Pagan eyewitness account indicates that he saw the air bag

fully deployed that is, after it had inflated and deflated. fully deployed that is, after it had inflated and deflated. 

Further, Pagan attested that he did not see the Further, Pagan attested that he did not see the

driver of the Volvo, but never intimated that it was the air bag driver of the Volvo, but never intimated that it was the air bag

( fully inflated or otherwise) that obstructed his view of the ( fully inflated or otherwise) that obstructed his view of the

driver. Whether this was because Perez was no longer upright in driver. Whether this was because Perez was no longer upright in

the driver s seat after having been knocked unconscious during the driver s seat after having been knocked unconscious during

the air bag deployment, or because, as Pagan also attested, the the air bag deployment, or because, as Pagan also attested, the

Volvo was already zigzagging (i.e., Perez had already lost Volvo was already zigzagging (i.e., Perez had already lost 

control), were material matters which required further control), were material matters which required further

factfinding. Moreover, Perez also represented that two other factfinding. Moreover, Perez also represented that two other

eyewitnesses, riding with Pagan, would corroborate Pagan s eyewitnesses, riding with Pagan, would corroborate Pagan s

observations at trial. observations at trial.

 

zigzagging?
A: Yes.
Q: Do you know why the automobile was
zigzagging? If you know.
A: Repeat the question, please.
Q: Do you know the reason for which the
automobile was zigzagging? If you know.
For example: did it have something stuck
in the axle of whatever? Or don t you
know?
A: Yes. The air bag.
Q: The air bag?
A: Yes. I see a the big bag and I
see white smoke inside the car. I
see that is the problem, I the
first thing I say is in my mind,
well, listen, this has the air
bag open, that is 
Q: Okay. That is, that when before
the accident, or was it after the
accident that you saw the air bag?
A: No, before, before.

7

For its part, Volvo presented no evidence that an For its part, Volvo presented no evidence that an

oncoming driver could not see an open (i.e., deployed and oncoming driver could not see an open (i.e., deployed and 

deflated) air bag in these circumstances. Nor did Volvo under- deflated) air bag in these circumstances. Nor did Volvo under-

mine the probativeness of the deposition testimony that Pagan mine the probativeness of the deposition testimony that Pagan

simultaneously observed white smoke inside the [Perez] car,  simultaneously observed white smoke inside the [Perez] car, 

presumably a reference to the release of white powder which presumably a reference to the release of white powder which

normally accompanies an air bag deployment. In our view, there- normally accompanies an air bag deployment. In our view, there-

fore, the eyewitness testimony from Pagan could not be dismissed fore, the eyewitness testimony from Pagan could not be dismissed

as incredible without resorting to impermissible factfinding. as incredible without resorting to impermissible factfinding.

See Abraham v. Nagle, 116 F.3d 11, 15 (1st Cir. 1997) ( It was See Abraham v. Nagle, 116 F.3d 11, 15 (1st Cir. 1997) ( It was 

not, of course, [permissible] . . . to resolve credibility issues not, of course, [permissible] . . . to resolve credibility issues

on summary judgment. ). on summary judgment. ).

Next, Volvo suggests that it proffered other competent Next, Volvo suggests that it proffered other competent

evidence the ADAR and the expert testimony from its employee, evidence the ADAR and the expert testimony from its employee,

Schultz which was so conclusive that no rational factfinder Schultz which was so conclusive that no rational factfinder

could credit the eyewitness deposition testimony from Pagan. could credit the eyewitness deposition testimony from Pagan.

Volvo emphasizes, in particular, that the electrical circuits in Volvo emphasizes, in particular, that the electrical circuits in

the air bag sensor burn out as soon as the bag deploys, rendering the air bag sensor burn out as soon as the bag deploys, rendering

the sensor incapable of recording further impact data, and the sensor incapable of recording further impact data, and

therefore that the sensor could not have recorded the Perez-Pagan therefore that the sensor could not have recorded the Perez-Pagan

crash had the bag deployed prematurely.  crash had the bag deployed prematurely. 

Nevertheless, the Volvo proffer did not rule out a Nevertheless, the Volvo proffer did not rule out a

reasonable inference that for whatever reason, known or reasonable inference that for whatever reason, known or

unknown the sensor may have received or recorded a false unknown the sensor may have received or recorded a false

deceleration or impact reading, mistaken normal driving condi- deceleration or impact reading, mistaken normal driving condi-

tions for a collision, and falsely stored that nonevent as a tions for a collision, and falsely stored that nonevent as a

8

[ low violence ] crash. Of course, Schultz did state, though [ low violence ] crash. Of course, Schultz did state, though

without any factual predicate or explanation, that [a]n air bag without any factual predicate or explanation, that [a]n air bag

sensor, even if defective, cannot, and will not, record informa- sensor, even if defective, cannot, and will not, record informa-

tion of an accident that did not occur.  tion of an accident that did not occur. 

We find particularly troubling Volvo s counterintuitive

assumption that an electrical component cannot malfunction and 

that its unfailing performance can be predicted with absolute

certainty in any and all circumstances. True, Volvo was unable

to induce another false reading from this sensor, but the ADAR in

no way suggests that Volvo attempted to replicate the exact

external conditions to which the sensor had been subjected in 

situ on August 10, 1993. Cf. Bogosian v. Mercedes-Benz of N.A., 

Inc., 104 F.3d 472, 480 (1st Cir. 1997) ( Where, as here, a 

conclusion that a product was defective derives from a test or

examination of it, there must be sufficient evidence to support a

finding that the product was in substantially the same condition

in relevant respects when tested as it was at the time of

the accident. The absence of such a showing renders irrelevant

any testimony based on the test or examination. ).

Further, Volvo s sweeping assumption was placed in

serious question by Perez. In its July 1994 written response to

the NHTSA investigation of inadvertent air bag deployments, Volvo

acknowledged that external conditions, such as exposure to

humidity, might affect the performance of its air bag system, and

that in some cases Volvo cannot reasonably determine why the

9

[alleged premature] deployment occurred. 7 See Abraham, 116 F.3d See Abraham, 116 F.3d 

at 15 (witness credibility normally a matter for factfinding); at 15 (witness credibility normally a matter for factfinding);

see also Den Norske Bank AS v. First Nat l. Bank, 75 F.3d 49, 58 see also Den Norske Bank AS v. First Nat l. Bank, 75 F.3d 49, 58 

(1st Cir. 1996). Thus, we cannot accept the contention that no (1st Cir. 1996). Thus, we cannot accept the contention that no

rational factfinder could do other than reject the Pagan eyewit- rational factfinder could do other than reject the Pagan eyewit-

ness testimony in light of the Volvo proffer. ness testimony in light of the Volvo proffer.

Lastly, Volvo insists that a strict liability claimant Lastly, Volvo insists that a strict liability claimant

cannot establish an unsafe defect in a product without expert or cannot establish an unsafe defect in a product without expert or

scientific evidence. Since it does not affect our decision, we scientific evidence. Since it does not affect our decision, we

accept arguendo Volvo s contention that the expert testimony accept arguendo Volvo s contention that the expert testimony 
 

We cite the NHTSA report only to demonstrate that Volvo s
written responses to the NHTSA generate a trialworthy credibility
issue in that they tend to refute Schultz s expert testimony that
Volvo sensor readings are infallible. Since the 600-page NHTSA
report was on microfilm, Perez proffered only a few transcribed
pages, but made clear his willingness to produce the entire
report to the district court on request. However, before
dismissing the case, the district court instead decided to
reserve for trial any question concerning the admissibility of
the report on the defect issue. See supra note 4. As the 
proponent of the report, of course, Perez will need to satisfy
the district court on remand that the reports of inadvertent
deployments received from consumers by the NHTSA are not
inadmissible hearsay. See, e.g., Fed. R. Evid. 803(8)(A) (public 
agency statements "in any form" setting forth "the activities of
the office or agency" are not hearsay). Without regard to
whether the entire NHTSA report is admissible, however, there
presently appears no reason to believe at the summary judgment
stage that the responses Volvo provided in the NHTSA
investigation relied upon here could not be introduced as
admissions of a party-opponent. See Fed. R. Evid. 801(d)(2). 
Furthermore, Perez claims that the NHTSA investigation
involved 1993 Volvo 900 models like the one Perez was driving on
August 10, 1993, yet his abbreviated proffer dealt only with 1991
models. Since [t]he reports of other incidents would be
probative evidence of the existence of a [] defect only if the
incidents occurred under circumstances substantially similar to
those surrounding [plaintiff s] accident, Cameron v. Otto Bock 
Orthopedic Indus., Inc., 43 F.3d 14, 16 (1st Cir. 1994), it would 
remain for Perez to lay a proper evidentiary foundation for the
latter evidence.

10

proffered by Perez would be inadmissible under Daubert v. Merrell proffered by Perez would be inadmissible under Daubert v. Merrell 

Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See supra note Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See supra note 

4. 4.

The Supreme Court of Puerto Rico has yet to address The Supreme Court of Puerto Rico has yet to address

this precise issue. Thus, we look to analogous state court this precise issue. Thus, we look to analogous state court

decisions, persuasive adjudications by courts of [the] states, decisions, persuasive adjudications by courts of [the] states,

learned treatises, and public policy considerations identified in learned treatises, and public policy considerations identified in

state decisional law in order to make an informed prophecy of state decisional law in order to make an informed prophecy of

how the [Puerto Rico Supreme Court] would rule. Rodriguez-Suris how the [Puerto Rico Supreme Court] would rule. Rodriguez-Suris 

v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). 

Puerto Rico consistently has looked to the Restatement Puerto Rico consistently has looked to the Restatement

(Second) of Torts 402A in defining its strict product liability (Second) of Torts 402A in defining its strict product liability

doctrine. See Malave-Felix, 946 F.2d at 971; supra note 5. doctrine. See Malave-Felix, 946 F.2d at 971; supra note 5. 

Accordingly, asked to predict Puerto Rico law, we have consulted Accordingly, asked to predict Puerto Rico law, we have consulted

the pertinent case law available in other jurisdictions which the pertinent case law available in other jurisdictions which

likewise embrace the Restatement model.8 Our task in the present likewise embrace the Restatement model. Our task in the present

context is straightforward. context is straightforward.

Jurisdictions which model their decisional law along Jurisdictions which model their decisional law along

Restatement lines uniformly hold that a strict liability claimant Restatement lines uniformly hold that a strict liability claimant 

may demonstrate an unsafe defect through direct eyewitness may demonstrate an unsafe defect through direct eyewitness

observation of a product malfunction, and need not adduce expert observation of a product malfunction, and need not adduce expert

testimony to overcome a motion for summary judgment. See, e.g., testimony to overcome a motion for summary judgment. See, e.g., 
 

See, e.g., Benitez-Allende v. Alcan Aluminio do Brasil, 857 
F.2d 26, 34 (1st Cir. 1988) (predicting Puerto Rico law in light
of fact that Puerto Rico . . . has chosen to adopt the
principles of strict liability laid out in Restatement (Second)
of Torts 402A (1965) ); Guevara v. Dorsey Labs., 845 F.2d 364, 
365 (1st Cir. 1988) (same); McPhail v. Municipality of Culebra, 
598 F.2d 603, 605 (1st Cir. 1979) (same).

11

Collazo-Santiago v. Toyota Motor Corp., 937 F. Supp. 134, 139 Collazo-Santiago v. Toyota Motor Corp., 937 F. Supp. 134, 139 

(D.P.R. 1996) (predicting that Puerto Rico courts would adopt (D.P.R. 1996) (predicting that Puerto Rico courts would adopt

California law, where it is well settled that a plaintiff in a California law, where it is well settled that a plaintiff in a

products liability action is entitled to present her case without products liability action is entitled to present her case without

relying on the testimony of an expert witness ).9 Although it relying on the testimony of an expert witness ). Although it

is helpful for a plaintiff to have direct evidence of the defec- is helpful for a plaintiff to have direct evidence of the defec-

tive condition which caused the injury or expert testimony to tive condition which caused the injury or expert testimony to

point to that specific defect, such evidence is not essential in point to that specific defect, such evidence is not essential in

a strict liability case based on 402A [of the Restatement a strict liability case based on 402A [of the Restatement

(Second) of Torts], " and direct observation of " [t]he malfunc- (Second) of Torts], " and direct observation of " [t]he malfunc-

tion itself is circumstantial evidence of a defective condi- tion itself is circumstantial evidence of a defective condi-

 

See, e.g., Woods v. General Motors Corp., No. 920516326S, 
1996 WL 57016, at *3 (Conn. Super. Ct. Jan. 24, 1996) ( We
conclude that in a product liability action, it is not necessary
to present expert testimony to establish [a genuine factual
dispute] that [a vehicle] was defective. ); Varady v. Guardian 
Co., 506 N.E.2d 708, 712 (Ill. App. Ct. 1987) (same, where 
plaintiff testified that as she turned to her left with her
crutches under her armpits, the left crutch collapsed, causing
her to lose her balance and fall ); Virgil v. Kash n Karry  
Serv. Station, 484 A.2d 652, 656 (Md. Ct. Spec. App. 1984) (same, 
where plaintiff testified that a thermos bottle . . . implode[d]
when coffee and milk [were] poured into it, since testimony
would prove that the product fail[ed] to meet the reasonable
expectations of the user ); Tune v. Synergy Gas Corp., 883 S.W.2d 
10, 14 (Mo. 1994) (en banc) (same); Falls v. Central Mut. Ins. 
Co., 669 N.E.2d 560, 562 (Ohio Ct. App. 1995) (same, where 
plaintiff attested that the seat belt came unfastened during the
collision, despite expert s opinion that belt was not
defective); Dansak v. Cameron Coca-Cola Bottling Co., 703 A.2d 
489, 496-97 (Pa. Super. Ct. 1997) (same, where plaintiff stated
that [s]he opened the carton, removed a six-pack, and was cut by
a broken bottle in the six-pack ); Sipes v. General Motors Corp., 
946 S.W.2d 143, 154 (Tex. App. 1997) (same, where plaintiff
contended that air bag failed to deploy, and defendant s expert
contradicted) (citing McGalliard v. Kuhlmann, 722 S.W.2d 694 
(Tex. 1986)); Potter v. Van Waters & Rogers, Inc., 578 P.2d 859, 
865 (Wash. Ct. App. 1978) (same, where lay witnesses testified
that rope was defective).

12

tion. Ducko v. Chrysler Motors Corp., 639 A.2d 1204, 1206 (Pa. tion. Ducko v. Chrysler Motors Corp., 639 A.2d 1204, 1206 (Pa. 

Super. Ct. 1994) (citations omitted). Thus, a manufacturer s own Super. Ct. 1994) (citations omitted). Thus, a manufacturer s own

employee-expert does not necessarily trump a strict liability employee-expert does not necessarily trump a strict liability

claimant s circumstantial non- expert evidence at the summary claimant s circumstantial non- expert evidence at the summary

judgment stage. See id. at 1207 ( In granting [defendant s] judgment stage. See id. at 1207 ( In granting [defendant s] 

motion for summary judgment in the instant case, the trial court motion for summary judgment in the instant case, the trial court

relied upon the deposition testimony and reports submitted by relied upon the deposition testimony and reports submitted by

Chrysler's expert. This was error. [Plaintiff s] testimony of Chrysler's expert. This was error. [Plaintiff s] testimony of

the erratic performance of the vehicle's steering and braking the erratic performance of the vehicle's steering and braking

systems, under the circumstances of this case, was sufficient to systems, under the circumstances of this case, was sufficient to

make out a prima facie case of a manufacturing defect in the make out a prima facie case of a manufacturing defect in the

vehicle. The issue of strict liability, therefore, was a disput- vehicle. The issue of strict liability, therefore, was a disput-

ed issue for the jury. ).10 Therefore, even if the expert ed issue for the jury. ). Therefore, even if the expert

testimony proffered by Perez were to be excluded, see supra note testimony proffered by Perez were to be excluded, see supra note 

3, the Pagan eyewitness testimony standing alone represent- 3, the Pagan eyewitness testimony standing alone represent-

ed competent evidence that the air bag in the Perez Volvo had an ed competent evidence that the air bag in the Perez Volvo had an

unsafe defect. See Sipes v. General Motors Corp., 946 S.W.2d unsafe defect. See Sipes v. General Motors Corp., 946 S.W.2d 

143, 154 (Tex. App. 1997) (noting that [t]he fact finder may 143, 154 (Tex. App. 1997) (noting that [t]he fact finder may

accept lay testimony [that an air bag failed to deploy during accept lay testimony [that an air bag failed to deploy during

 

Indeed, strict liability claimants may resort to an array of
circumstantial evidence. See Dansak, 703 A.2d at 496 ( Such 
circumstantial evidence includes (1) the malfunction of the
product; (2) expert testimony as to a variety of possible causes;
(3) the timing of the malfunction in relation to when the
plaintiff first obtained the product; (4) similar accidents
involving the same product; (5) elimination of other possible
causes of the accident; and (6) proof tending to establish that
the accident does not occur absent a manufacturing defect. ).

13

frontal collision] over that of [defendants ] experts ).11  frontal collision] over that of [defendants ] experts ). 

Of course, we express no opinion regarding the relative Of course, we express no opinion regarding the relative

persuasiveness of the competing Rule 56 proffers, which is a persuasiveness of the competing Rule 56 proffers, which is a

matter for the trier of fact. matter for the trier of fact.

The district court judgment is VACATED and the case is The district court judgment is VACATED and the case is 

remanded for further proceedings consistent herewith; costs to remanded for further proceedings consistent herewith; costs to 

appellant. SO ORDERED. appellant. SO ORDERED. 

 

11We consider only the caselaw defining the standard
governing strict product liability claims, like the present,
which allege unsafe manufacturing defects. We take no position
in regard to the standard applicable to strict liability claims
based on design defects, or product liability claims sounding in
negligence.

14